## WALKER et al. v. CROSS.

(Circuit Court of Appeals, Eighth Circuit. March 6, 1908.)

No. 2,624.

PRINCIPAL AND AGENT—CONTRACTS—LIABILITIES OF AGENT.

Defendants were real estate agents, and in the belief that they were authorized by the nonresident owner to sell a farm they wrote out a form of temporary contract for its sale to plaintiff, naming themselves as vendors. The paper was not signed, but was taken by plaintiff to his home in another state as he still had the purchase under advisement. A correspondence followed between the parties, in which defendants continually referred to the fact that they were acting as agents, and spoke of the necessity of the concurrence of their principal if certain suggested changes should be made in the contract. They forwarded an abstract of title which was approved by plaintiff's attorney, and plaintiff then signed and forwarded the contract with some changes made by him to a bank with a first payment to be delivered to defendants when they signed and recorded the contract. This they did not do because of its having been altered, but they procured deeds to be executed by their principal, and sent to the bank from which they were accepted by plaintiff and full payment made, the money being disbursed by the bank under direct instructions from the vendor, and defendants receiving only their commission. It was subsequently ascertained that the vendor had no title, the apparent conveyance to him being fraudulent. Held, that defendants having acted only as agents for a known principal, and in good faith were not liable to plaintiff for the damages sustained by him, through the failure of his title,

not having signed any written contract valid under the statute of frauds binding themselves as vendors.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 40, Principal and Agent, §§ 476-479.]

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

Ben. Eli Guthrie and Samuel S. Dunham (Ben. Franklin, on the brief), for plaintiffs in error.

C. A. Carpenter (Arthur Springer, on the brief), for defendant in error.

Before HOOK and ADAMS, Circuit Judges, and CARLAND, District Judge.

CARLAND, District Judge. This action was brought by Cross to recover damages from Walker Bros. for the alleged breach of an alleged contract for the sale of real estate. The trial was had before the court sitting with a jury. At the close of all the evidence, counsel for Walker Bros. requested the court to instruct the jury as follows:

"The jury are instructed that under the law and the evidence in this case the plaintiff cannot recover, and your finding should be for the defendants."

This request was refused and an exception taken. The jury returned a verdict in favor of the plaintiff in the sum of $5,756.92, upon which a judgment was duly entered. To reverse said judgment a writ of error was sued out from this court. The ruling of the court above mentioned together with many others made during the trial are assigned as error. In the view we take of the evidence, however, we do not deem it necessary to consider any other ruling than the one above mentioned, as all the evidence has been certified in a bill of exceptions. From such bill of exceptions the following facts appear: In 1902, Walker Bros. were engaged in the real estate business at Macon, Mo. At this time Edward Gould was the owner of the E. ½ of the N. W. ¼ and the W. ½ of the N. E. ¼, sec. 14, t. 57, r. 12, Shelby county, Mo. Gould lived at Sunnydale, Wash. October 2, 1902, Walker Bros. wrote the following letter:

"Edwin Gould, Seattle, Wash.

"Dear Sir: Is your 160 acres of land N. E. of Clarence for sale? If so, at what price and how much cash, with balance 1st of March when I suppose possession can be given, and if we sell, what commission will you allow us?"

No reply to this letter was received from Edwin Gould. Walker Bros. had a trade-name of "Iowa Real Estate Exchange." On October 10, 1902, one Nelson O. Nailen wrote the following letter:

"Seattle, Wash. October 10, 1902.
"Iowa Real Estate Exchange, Macon, Mo.

"Gentlemen: I am about to make a trade for the east half of the northwest quarter and the west half of the northeast one-quarter, being 160 acres of land and all in section 14, township 57, range 12, Shelby county, state of Missouri. Title to this land is now of record in the name of Edwin Gould. Should I make the deal I will sell the land. I wish that you would be kind enough, on receipt of this letter, to let me know the value of the land; and also try and find a buyer for the same. Stamp inclosed for reply. Thanking you in advance for an immediate reply, I remain."

Walker Bros. replied to this letter as follows:

"Mr. Nelson O. Nailen, Seattle, Wash.

"Dear Sir: Your favor of the 10th at hand. We are acquainted with the land you write about, and believe it can be sold at $45 per acre and if you can trade·for it on this basis, we don't think you would be hurt. We would be pleased to handle it for you at a reasonable commission. Please reply on receipt, and oblige."

Not hearing from Nailen, Walker Bros. on October 16, 1902, wrote the following letter:

"Mr. Nelson O. Nailen, Seattle, Wash.

"Dear Sir: You wrote us in October in regard to the value of a quarter section of· land in section 14, township 57, range 12, Shelby· county, Missouri. Did you make the deal for this land, if so please give us your price on the same as you stated in your letter that you would like to sell the land if you closed the deal."

Nailen answered this letter as follows:

"Messrs. Walker Bros., Macon, Mo.

"Gentlemen: Yours of the 16th ult. at hand. I would have written you some time ago regarding the matter, but the deal was being deferred from time to time, but now the matter is in such shape it may go through. I think the transfer will be made next Monday and as soon as. I get deed I will send on at once to be placed of record. If you have any one in mind who would like to have the land, let me know; otherwise, I will trade for it. I can make a very fine thing out of it on trade. Address me at General Delivery here.

"Dated Seattle, Wash., Nov. 8, '02."

To which letter Walker Bros. replied as follows:

"Nelson O. Nailen, Seattle, Wash.

"Dear Sir: Your favor of November 8th duly received, and I note that you do not fix any price on the Shelby county land, so that I am at a loss to know what price to ask for it. Please inform me by return mail at what price you hold the land and on what terms. When so advised I think I can find you a purchaser, if price and terms are reasonable."

This last letter ended the correspondence with Nailen directly but on December 22, 1902, one J. C. Calhain wrote Walker Bros. as follows:

"Seattle, Wash., Dec. 22, 1902.

"Walker Bros., Macon, Mo.

"Mr. Nailen, after thinking the matter over, says that he will take cash for the land, exclusive of your commission, the sum of $45.00 per acre. A couple of parties just over the county line from you has made him some such offer; somehow, he has either lost or misplaced the letters, and I don't know their contents. However, if you wish to handle the land on these terms, do so. Mr. Nailen says he wants to go north to Alaska soon after Jan. 1st next as possible."

On the evening of January 7, 1903, Cross was at Macon, Mo., and met James Walker of the firm of Walker Bros. Their conversation resulted in a visit by James Walker and Cross, on the next day, to the land in question. Cross on this visit learned that the land was in possession of a tenant by the name of Stallcup. That Walker Bros. were simply acting as real estate agents in negotiating a sale thereof for the owner. Cross and James Walker returned to Macon, Mo., the evening of January 8 and Cross agreed to buy the farm at $47 per acre, if Walker Bros. would write out a contract, so that he could take

it home and show it to his wife, and if it suited her he would send the contract back to Walker Bros. with a draft for $600, whereupon William G. Walker dictated to a stenographer the following paper:

"This agreement made and entered into this eighth day of January, 1903, by and between W. G. Walker and James M. Walker, composing the firm of Walker Bros. of Macon county, and state of Missouri, party of the first part, and David Cross of Louisa county and state of Iowa, party of the second part, witnesseth: That for and in consideration of the covenants and agreements hereinafter contained, the said party of the first part hereby agrees to sell and by these presents does sell to the said party of the second part, the following premises situated in Shelby county and state of Missouri, to wit: The west half of the N. E. one-fourth ($\frac{1}{4}$), and the east one-half ($\frac{1}{2}$) of the northwest one-fourth ($\frac{1}{4}$), each in section 14, twp. 57, range 12, and containing 150 acres, more or less according to the government survey, for the sum of $7,520.00 to be paid at the time and in the manner following: $600.00 on the execution and delivery of these presents, receipt of which is hereby acknowledged; the balance to be paid as follows: $6,920.00 on or before the fifteenth day of March, 1903. None of the amounts above described shall draw interest until after the fifteenth day of March, 1903, but thereafter at the rate of 6 per cent. Party of the second part hereby agrees to purchase said premises above described and to pay therefor the sum of $7,520.00 at the times and in the manner above set forth. Either party failing to perform the conditions of this agreement shall forfeit to the other the sum of ———— in addition to the amount already paid. Said party of the first part hereby agrees that upon the receipt of the final payment he will execute and deliver to said party of the second part a good and sufficient warranty deed, conveying title in fee simple to the above-described premises and to furnish abstract of title showing good and merchantable title to said lands and clear of all liens and incumbrances whatever, * * * to pay all taxes and interest that may be due up to and including the year 1902, and that he will give possession of the said premises on the fifteenth day of March, 1903, in as good condition as the same now are, ordinary wear excepted, or when final payment is made.

"In witness whereof, the said parties have hereto set their hands on the day and date first above written."

Cross returned home with the above unsigned paper in his possession on January 9th, and on January 10th wrote the following letter:

"Walker Bros., Macon, Mo.

"Dear Sirs: I got home yesterday evening. I am not feeling very well; have not been out much. I saw P. T. McVay; he is my legal adviser. He thought we had better have you send up the abstract of title of that farm for inspection and have the contract signed and recorded before there is any money paid; that is, if the abstract is all right we will sign the contract and send it to you and send a draft for $600.00 to the bank, and when you return the contract to the bank properly recorded, you can get your money. It seems to satisfy my wife better. For my own part, I have all confidence in you gentlemen, and thank you again for your kindness to me while there. I have not seen those prospective land buyers, but will soon."

In reply thereto Walker Bros. wrote Cross as follows:

"Jan. 12, 1903.

"David W. Cross, Letts, Iowa.

"Dear Sir: Your favor of Jan. 10th duly received and in reply thereto will say: It occurs to us that a proper and satisfactory arrangement can be made as follows: Let your attorney, Mr. McVay, write such stipulations in the contract as may be satisfactory to you. He might say something like this: That upon the approval of the abstract showing good title to the land, approval to be made by your attorney, Mr. McVay and, when so approved, contract to be returned to the bank with instructions to have the same recorded when signed by us, and, when so recorded, the $600.00 to be paid; and if ab-

stract should prove unsatisfactory after due examination and is not made satisfactory by March 1st, 1903, contract to become void and of no effect. And, further if you wish, require the owner to deposit in said Exchange Bank of Macon, Mo., a good and sufficient warranty deed, conveying title in fee simple to said land; said deed to be delivered to Mr. Cross, the purchaser, upon final payment therefor. The arrangement you speak of is entirely satisfactory with us, *but the party owning the land* might hesitate or object to incurring *this trouble and expense of procuring and making abstract and a deed; unless we have some kind of an agreement, though conditional besides, he is taking the land out of the market until March 15, 1903.*

"We hope you may see the reasonableness of this request, and have *your attorney write a contract that is satisfactory to you and return to bank, when we will sign the same and have the bank place* it on record, or as you may direct."

(The italics in this opinion are ours.)

On the same day P. T. McVay wrote Walker Bros. the following letter:

"W. G. Walker, Esq., Macon, Mo.

"Dear Sir: In reference to the contract of purchase of land, Mr. David W. Cross wishes me to inform you that if you will send abstract of title to the land to him for examination, and if, after examination, he is satisfied with the title and same shows your recorded power of attorney or right to convey, he will send $600.00 to the State Exchange Bank and contract signed by him, and when the same is signed and acknowledged by you and recorded to the bank, the bank will be instructed to pay said sum to you."

"If this is satisfactory, you may forward abstract for examination; abstract also to be delivered to the bank with contract recorded, and to be brought down showing record of contract and premises free from all liens and incumbrances and perfect title."

Walker Bros. replied thereto as follows:

"Perry T. McVay, Letts, Iowa.

"Dear Sir: Your favor of January 10th duly received and contents noted. We will send abstract of title to the lands purchased by Mr. Cross as soon as *we receive it from the owner who resides in the state of Washington*, which fact may delay sending for a few days. It is perfectly satisfactory with us that Mr. Cross should make a thorough examination of abstract, and be satisfied with the title before he pays any money. We have no power of attorney for the sale of this land, but have authority to do so *by letter received from the owner*. We are following in this case our usual way of making sales. We have little trouble here in procuring good titles, as there are very few bad ones, and have no doubt, whatever, as to the correctness of the owner's title, and have no hesitancy in submitting it to you. We think it but fair that Mr. Cross should make a contract conditioned upon good title, and without payment of any money until it is satisfied with the same. Prior to the receipt of your letter, we wrote Mr. Cross fully in regard to the contract. *The gentleman who owns the land bought it without ever seeing it* or knowing its value, in consequence of which, Mr. Cross secures an excellent bargain in this land, and if he does not wish to keep it, he can turn it for more money. We would be pleased without consulting our banks here to refer you to them as to our responsibility and reliability, to wit: The State Exchange Bank, the Citizens' Bank, First National Bank, all of Macon, Missouri."

On January 14, 1903, McVay wrote the following letter to State Exchange Bank:

"Dear Sirs: I herewith inclose to you as per arrangement with Walker Bros. a contract and also a draft for $600.00 payable to the said Walker Bros. being a part of purchase price under said contract of the following described land in Shelby county, Missouri, to wit: The W. ½ of N. E. ¼ and the E. ½ of the N. W. ¼, all in sec. 14, twp. 57 of range 12. Said draft for six

hundred dollars herewith inclosed is to be held by you until all of the following conditions have been complied with, namely, until you have received notice from me that the abstract furnished by Walker Bros. for said land is satisfactory up to date of certificate on abstract, and *until they have properly executed and acknowledged and had recorded in the recorder's office in your county the inclosed contract, and have returned the same to you together with a warranty deed with full covenants of warranty properly executed and acknowledged by the owner of the land and his wife,* conveying said land to David W. Cross, and when all the above things have been done, you are to deliver inclosed draft to Walker Bros."

The same day McVay wrote as follows to Walker Bros:

"Dear Sirs: I have inclosed draft to State Exchange Bank with letter of advice as herein inclosed. When the second and last payment comes due, according to the contract as signed by Mr. David W. Cross you will be required to bring abstract up to the time of the recording of deed showing perfect title free from all liens and incumbrances at that date. You will see that the bank having the $600.00 will insure our performing our part of contract. All Mr. Cross wants is to be certain that the title is good, he knows what the land is—and all he asks is a perfect title to same for the consideration which he agrees to give you. I hope this will be satisfactory to you. Please make the abstract as full as possible, not failing to show record of notary seal, notary or officer acknowledging the deed, name and date, revenue stamps and amount affixed to deed, and amount of consideration for each conveyance. In probate, set out copy of wills and probate proceedings in full. In order to be satisfactory to me, the abstract must be a full exemplification of the records on every material point in order that I may determine the sufficiency of the title."

The contract returned to the State Exchange Bank was the same paper taken by Cross from Walker Bros. and hereinbefore set out except the same was signed by Cross and had the following interlineations:

"And the first parties agree to furnish an abstract showing good and perfect title to above premises, and satisfactory to P. T. McVay, the second party's attorney.

"Provided said abstract and title to said premises is satisfactory to P. T. McVay or is made satisfactory to him by March 16, 1903.

"But if said abstract is not satisfactory to P. T. McVay or made so by March 15, 1903, first parties agree to return the $600.00 paid to second party.

"Said abstract to be subject to the approval or disapproval of P. T. McVay and if not approved, said $600.00 to be returned to second party and he not to be required to take or pay for premises."

The paper taken by Cross to Iowa from Missouri with these interlineations constitutes the alleged contract set out in the petition. January 16, Cross wrote Walker Bros. as follows:

"Sirs: I signed the contract and inclosed draft for $600.00 made payable to Walker Bros. when you have complied with what Mr. McVay has written. I would like if you would make two deeds; that is, make deed to Harriet L. Cross for the east 80 and the west 80 to David W. Cross, if it is not too much trouble. If you make only one, make it to Harriet L. Cross. You can charge me with the expense of one deed and I will settle with you for it when I come down. Let me hear from you soon. The east 80 would be the west ½ of N. E. ¼ and the west 80, the E. ½ of the N. W. ¼."

January 16, 1903, Walker Bros. replied as follows:

"David W. Cross, Letts, Iowa.

"Dear Sir: Your favor of the 15th inst. duly received. We will have two deeds made as you request as the expense of so doing will be very small. We have ordered abstract to the land made, and will send same to your attorney

as soon as completed. The arrangement with the bank is entirely satisfactory."

January 17, 1903, Walker Bros. replied to McVay as follows:

"Dear Sir: Your favor of Jan. 14th inst. duly received and contents noted. The arrangement made with the State Exchange Bank is entirely satisfactory. We are having abstract prepared and will send it as soon as it is finished. Mr. Cross instructs us in his letter of the 15th inst. that he desires one eighty of the land deeded to his wife and the other eighty to himself. We suppose that will not contravene your instructions to the bank wherein you say, 'lands shall be conveyed to David W. Cross.'"

On January 23, 1903, Walker Bros. forwarded an abstract of the land to McVay. On February 11, 1903, Walker Bros. wrote to Cross as follows:

"D. W. Cross, Letts, Iowa.

"Dear Sir: Your favors of the 20th ult., and the 6th inst., duly received and contents noted. *We have not been able so far to get into direct communication with the owner of the land, as he has been away from home, and his attorney did not seem advised as to the exact amount of rental he was getting.* We made a trip yesterday to ascertain the facts in the case, and the tenant informs us that he has the land rented this year for the sum of $375.00. We also found that both houses were occupied and will be during the summer, so I suppose we will have to look you up a house in Clarence, which we will do in a few days. It was understood, you remember, when you were here, that this man has the land (tenanted) for this year, and that you would have possession only through him as your tenant, and not in person. You will remember, also, that at our price $47.50 per acre, we agreed to make the rental $400.00, but after giving you a cut of 50 cents per acre, that you should be entitled to whatever rental tenant on the place was to pay. We have abstract about perfected, and as soon as we can *get deed from owner* (if you should require it) we will send abstract to your attorney for reinvestigation."

On February 21, 1903, Walker Bros. wrote to Cross as follows:

"Dear Sir: Your favor of the 19th is at hand and contents noted. We have delayed writing to you for some time, thinking that we would be able to give you some definite information, *when we heard from our man in the west who owns the land.* The deed from the party of whom the present owner bought is not joined in by his wife, nor does it state whether he is single or married. With a view of getting title straightened out as quickly as possible, I mailed a deed of correction, and requested that owner have the party of whom he bought, and if he was married, to have him and wife to execute deed and send me; if single, to procure affidavit to that effect. I also send separate deeds to owner to be executed to you and wife for the land you bought when here. This has been some ten days ago, and as yet have heard nothing from him. It may be the mail has been delayed by storms in the west. I thought I would not send abstract up until I had procured these corrections. Will write you fully as soon as I hear from owner. My brother who is looking for a house for you, is out of town to-day, and I may not be able to ascertain whether party wants to rent house and land, or simply house on land, I do not think there would be any objection to your building on the place next summer. I shall try to obtain this information and inform you in my next letter, when I will also write you in regard to trade for this little farm."

There was some further correspondence about defects in the title, but the correspondence was finally closed by the following letter from Walker Bros. to Cross:

"D. W. Cross, Letts, Iowa.

"Dear Sir: Answering your favor of the 9th inst., will say: That a few days will make no difference in closing the deal, and we would not expect you,

under the circumstances spoken of in your letter, to leave your son-in-law in his condition, and come here. In relation to the abstract, would like to say that we do not believe a straighter title can scarcely be found here in Missouri, or anywhere else, for that matter. Mr. McVay, no doubt is a good attorney, and would probably be a good judge of titles in Iowa, but it is very plain from his objections that he does not understand the law in Missouri in relation to land titles. You may submit to Mr. Rubey, the man whom you spoke about when here, and we are perfectly willing to make any corrections that he may suggest. If this should require much time, we would like of course to have you grant us that. You need not hurry away from your stricken people, as we will not require you to come until you can leave them in a better condition."

The abstract furnished by Walker Bros. to Cross on January 23, 1903, showed the title of the land in question to be in Nelson O. Nailen. On March 12, 1903, Cross reached Macon, Mo., for the purpose of consummating the purchase of the land. He had brought the abstract of the title with him from Iowa. Walker Bros. had never signed the so-called contract for the sale of the land unless their letters amounted to such signature. Walker Bros. between Jan. 8, 1903, and March 12, 1903, had procured Nelson O. Nailen to send two deeds for different portions of the land in question to the State Exchange Bank, Macon, Mo.

Taking the testimony of Cross as the true version of what occurred after he arrived at Macon on March 2d, the facts in relation thereto appear as follows: Cross went to the State Exchange Bank with W. G. Walker. Robey, the cashier, produced two deeds for the land in question, one from Nelson O. Nailen to Harriet L. Cross and one from same party to David W. Cross. Cross produced the abstract of title. After some unimportant corrections in the same Cross was satisfied therewith and thereupon delivered to cashier Robey a draft for the balance of the purchase money. The deeds for the land were delivered to Cross. The so-called contract was not produced at this time, and nothing was said about it. The bank was instructed by Cross to pay any liens that might be upon the land and deliver balance of purchase money to Walker Bros. as follows:

| | |
|---|---:|
| Abstract | $   21 00 |
| Commission | 320 00 |
| Recording deed | 85 |
| Writing three deeds | 1 50 |
| Attorneys fee sent J. C. Calhain at Seattle | 300 00 |
| Loan on land | 2,120 00 |
| Exchange and collection charges | 500 00 |

Draft sent to Nailen direct $4,751.65, making total of $7,520, the purchase price of the land. These amounts were paid under instructions direct from Nailen. Walker Bros. did not receive any of this money, excepting their commission of $320. They indorsed the draft of $600 so that it could be collected. Walker Bros. refused to sign the so-called contract when it was sent with the $600 draft by Cross to the State Exchange Bank, for the reason that the interlineations had changed the contract. The contract was presented by the bank to Walker Bros. for signature about January 18th or 20th. About April 20, 1903, Cross learned by a letter from Edward Gould written from Sunnydale, Wash., that he (Edward Gould) had never conveyed the

land in question to any one. Whereupon, Walker Bros. made an investigation of the facts, and ascertained that Nelson O. Nailen had never had any title to the land. That his pretended title was fraudulent and void. Cross got no title by the Nailen deeds, and hence never obtained possession of the land. Counsel for Cross in their brief make the following statement:

"Both Walker Bros. and David W. Cross completed this contract of sale under the assumption and belief that the owner of the land, Edward Gould, had transferred the land to Nelson O. Nailen, that Nailen was the bona fide owner, and that Cross was getting good title to the land. They both believed that Edward and Edwin Gould were identical."

This statement is fully sustained by the record and it relieves Walker Bros. from any charge of fraud in connection with the sale of the land. There remains but little to be said to show that the trial court erred in submitting the case to the jury.

Cross brought his action upon a written contract which is set out in his petition. If no such contract was entered into by Cross and Walker Bros., no recovery can be had thereon. As the sale of the land was within the statute of frauds of Missouri, the acceptance, ratification, or other act equivalent to a signing of the contract sued upon must be found in some writing of Walker Bros. Rev. St. Mo. 1899, § 3418 (Ann. St. 1906, p. 1951); Hackett v. Watts, 138 Mo. 502, 511, 40 S. W. 113; Allen v. Richard, 83 Mo. 55, 57, 60; Williams v. Morris, 95 U. S. 444, 458, 24 L. Ed. 360; Grafton v. Cummings, 99 U. S. 100, 25 L. Ed. 366.

In Williams v. Morris, supra, the Supreme Court used the following language:

"Unless the essential terms of the sale can be ascertained from the writing itself, or by reference in it to something else, the writing is not a compliance with the statute; and, if the agreement be thus defective, it cannot be supplied by parol proof, for that would at once introduce all the mischiefs which the statute was intended to prevent. 2 Kent, Com. (12th Ed.) 511; Norris v. Lain, 16 Johns. (N. Y.) 151; Dung v. Parkers, 52 N. Y. 494; Baltzen v. Nicolay, 53 N. Y. 467; Wright v. Weeks, 25 N. Y. 153; Parkhurst v. Van Cortlandt, 1 Johns. Ch. (N. Y.) 273."

This requires an examination of the correspondence between the parties and is a question of law for the court. Cross took the memorandum of agreement from Missouri back to Iowa unsigned by either party, and subsequently wrote the letter of January 10, 1903. In reply thereto Walker Bros. wrote the letter of January 12, 1903. In this letter Walker Bros. told Cross to have such stipulations written in the contract as would be satisfactory to Cross, and suggested some stipulations that might be proper. This letter also contained this clause:

"The arrangement you speak of is entirely satisfactory with us, *but the party owning the land might hesitate or object to incurring* this trouble and expense of procuring and making abstract and deed, unless we have some kind of an agreement, though conditional; besides he is taking the land off the market until March 15, 1903. We hope you may see the reasonableness of this request, and have your attorney to write a contract that is satisfactory to you and return to bank, when we will sign the same, and have the bank place it on record, or as you may direct."

Taking this letter as a whole it not only did not ratify or confirm the paper taken by Cross, but suggested the making of a new contract in accordance with the wishes of Cross. It also told Cross that Walker Bros. did not own the land, which fact he (Cross) already knew. At the date of this letter then neither party had signed any contract. On January 12, 1903, in reply to a letter written by McVay, the attorney of Cross, Walker Bros. agreed to send abstract of title as soon as they received it from the owner who they said resided in Washington. They also said they had no power of attorney to sell the land, but had authority to do so by letter received from the owner. Without reviewing every letter that constituted the correspondence between the parties it may be stated that there is not a line of it that assumes or states that Walker Bros. are selling the land as their own. On the contrary Walker Bros. are particular to state that they do not own the land but are simply acting for another who is the owner. It appears from the evidence that Walker Bros. did not sign the contract sued upon, and that every declaration in writing made by them was in direct opposition to the idea that they were selling the land as the owners thereof. Not only this, but both Cross and Walker acted on this theory. When Cross first received the abstract on January 23, 1903, he knew the title appeared therefrom to be in Nelson O. Nailen. Notwithstanding this he makes no complaint, and finally on March 12, 1903, he goes to Missouri, and without objection receives deeds from Nailen for the land. No conveyance was demanded from Walker Bros., and as Cross testifies the alleged contract now sued on was not produced or even mentioned, and in accordance with the statement of counsel for Cross in their brief both Cross and Walker Bros. honestly believed "that Nailen was the bona fide owner." Walker Bros. received none of the purchase price except the sum of $320 as their commission for making the sale, and Cross was entirely satisfied with the deed from Nailen until about April 20, 1903, when he learned from Edward Gould that he had never conveyed the land to Nailen. The case presents the ordinary sale of land by a real estate agent with a disclosed principal, the vendee dealing directly with the vendor. In such case the remedy of the vendee for defects in the title are upon such covenants as are contained in the deed which he accepts. There is no claim in the petition or evidence in the record that Walker Bros. ever warranted in any way the title of Nailen. It therefore clearly appears that the paper sued upon never became the contract of Walker Bros.

The instruction requested should have been given, and its refusal was error, for which the judgment must be reversed, and a new trial ordered.