## MALLORY S. S. CO. v. GARFIELD.

(Circuit Court of Appeals, Second Circuit. March 1, 1926.)

No. 228.

**1. United States ⬥52½, New, vol. 19A Key-No. Series—Agreement between United States Shipping Board Emergency Fleet Corporation and shipping company for operation of ship held to create agency.**

Agreement between steamship company and United States Shipping Board Emergency Fleet Corporation for operation of ship, reserving right in Fleet Corporation to prescribe form of freight contracts and bills of lading, with monthly compensation and commissions to shipping company for management, *held* to create a relation of agency.

**2. Principal and agent ⬥136(2)—Authorized agent is not liable for breach of contract made on behalf of principal, except where agency is concealed or when contracting as ostensible principal.**

An authorized agent is not liable for breach of contract, which it makes on behalf of principal, except where agency is concealed or where it is contracting as ostensible principal.

**3. Shipping ⬥132(2) — Allegation of agency of shipping company for United States Shipping Board Emergency Fleet Corporation would not support theory of undisclosed principal in suit for delay in shipment.**

In suit to recover damages for delay in transporting merchandise, allegation setting forth that shipping company was agent for United States Shipping Board Emergency Fleet Corporation would not support theory of undisclosed principal.

**4. Carriers ⬥174—First and each succeeding carrier must make delivery to next carrier to relieve itself from further obligation.**

The first and each succeeding carrier becomes agent of owner of goods to make delivery to next carrier, and it is incumbent on it to relieve itself of further obligation to do so.

**5. Shipping ⬥143—Rights and obligations of contract of carriage, entered into by shipping company operating ship for United States Shipping Board Emergency Fleet Corporation, are those of Fleet Corporation.**

Where shipping company was operating ship for United States Shipping Board Emergency Fleet Corporation, with knowledge of initial carrier acting as agent for owner, all the rights and obligations arising under contract of carriage are those of Fleet Corporation, and agent is not bound by contract.

**6. Shipping ⬥143—Shipping company, operating ship for United States Shipping Board Emergency Fleet corporation, is not liable to shipper for breach of contract.**

Shipping company, operating ship for United States Shipping Board Emergency Fleet Corporation, has no privity of contract with owner of goods shipped thereon, and is not liable to shipper for breach of contract.

Hand, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

Suit by Irvin McD. Garfield, as receiver of B. B. & R. Knight, Inc., against the Mallory Steamship Company and others. Judgment for plaintiff against defendant named, and it brings error. Reversed.

Burlingham, Veeder, Masten & Fearey, of New York City (John L. Galey, of New York City, of counsel), for plaintiff in error.

Carson & Conrad, of New York City (W. Davis Conrad, John Hunter, and Carl B. Carlton, all of New York City, of counsel), for defendant in error.

Before HOUGH, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. The original plaintiff in this action sought to recover damages for delay in the transportation of cotton shipped by rail at Stamford, Tex., for carriage to Natick, R. I. It was consigned to it. Four defendants were sued: The United States Shipping Board Emergency Fleet Corporation, the Clyde Steamship Company, the Mallory Steamship Company, and the New York, New Haven & Hartford Railroad Company. The action was removed from the Supreme Court of the County of New York. The complaint alleged that the shipment was made on March 19, 1920, the initial carrier being the Wichita Valley Railway Company; that the cotton was delivered by the railway company to "the defendant Mallory Steamship Company and/or Clyde Steamship Company as agents for the United States Shipping Board Emergency Fleet Corporation, which at all times herein mentioned was the owner and/or manager and operator of the steamship Conotton, * * * upon which said 92 bales of cotton were transported from Galveston to Boston, Massachusetts, en route

to Natick, Rhode Island." It is alleged that the cotton was not delivered to the defendant in error until February 14, 1921, but arrived in Boston about July 26, 1920. The delay in the delivery of the cotton resulted in depreciation in its value to the defendant in error and consequent damage.

The answer admitted delivery of the cotton to the railway company and subsequent delivery to "the Mallory Steamship Company and/or Clyde Steamship Company as agents of the Steamship Conotton," as well as its transportation to Boston on that steamship, operated by the Mallory Steamship Company or the Clyde Steamship Company as agents of the United States of America. There is a paragraph of the complaint which alleges "negligent, careless, and unlawful conduct in permitting the cotton to remain undelivered, and a failure to forward or deliver the same to its place of destination with reasonable dispatch." The allegations of negligence are denied. After the commencement of the action, a receiver was appointed for B. B. & R. Knight, Inc., and he was substituted as plaintiff.

The important facts have been stipulated, and are that the Conotton was a merchant ship engaged in merchant service between Galveston, Tex., and Boston, Mass.; that it was operated by the Clyde Steamship Company and/or the Mallory Steamship Company under an agreement with the Shipping Board, known as M. O. 3 form. The delivery of the cotton to the railroad and its transportation to Boston, arriving July 29, 1920, is stipulated, and its failure to go forward until February 10, 1921, when it was delivered to the New York, New Haven & Hartford Railroad Company for shipment to Natick, R. I., where it arrived on February 14, 1921.

Form M. O. 3, referred to, was offered in evidence by the defendant in error, and is an agreement between the United States Shipping Board Emergency Fleet Corporation and the Mallory Steamship Company, managing agent, "herein called the agent." It provides: "The Corporation appoints the agent as its agent for the management and operation and conduct of the business of such vessels as it has assigned or may assign to the agent for such purposes." It is conceded that the Conotton was one of the vessels assigned to the agent.

By the terms of the agreement, the agent agrees to do the work of manning, equipping, and supplying the vessels, and seeing that they are kept in repair, at least as far as ordinary repairs are concerned. The agent neither pays nor advances any of the expenses out of its own money. It is paid by the agent out of the deposit of funds maintained in a national bank in the name of the United States Shipping Board Emergency Fleet Corporation, and all moneys collected by the agent are required to be deposited and are the property of the Fleet Corporation, and subject to check by the treasurer of the corporation, as well as by the agent. The agent is required not to mingle such moneys with its own, and to render a complete account of all moneys received, and to keep separate books of account in manner prescribed and approved by the corporation. The books of the agent respecting the business of the agency must at all times be open to the Fleet Corporation, which may even take possession of them, whenever it deems it necessary for safety or protection.

[1] The corporation reserves the right to prescribe the form of freight contracts and bills of lading, and, if such are issued, they are apparently required to be issued in the name of the Fleet Corporation, for it is expressly provided that, even when the corporation has not prescribed the form of bill of lading, it shall reserve to the Fleet Corporation a lien adequate for its protection. All salvage is for the benefit of the Fleet Corporation. The agent is required to give a bond for the faithful performance of its duty. The agreement may be terminated at will, and then the Fleet Corporation takes control of all the vessels, and collects directly freight moneys and other charges remaining unpaid. Compensation is paid to the agent at the rate of $200 per ship per month; 10 cents per dead weight ton per month of all ships under 5,000 pounds (maximum $450 per ship per month), and smaller amounts for dead weight ton on ships of larger tonnage; and a commission of 10 per cent. of all net profits on an amount up to 50 cents per dead weight ton per month, with larger percentages of the net profit in excess of this amount. The terms of this agreement establish an agency. It clearly appears that the relation existing between the Fleet Corporation and the Mallory Steamship Company was that of agency, with duties and authority fully expressed.

At the trial, it was stated by counsel for the defendant in error that all parties were made defendants in the amended complaint served, because it was desired to take advantage of section 213 of the Civil Practice Act of the state of New York which provides: "Where the plaintiff is in doubt as to the

person from whom he is entitled to redress, he may join two or more defendants, to the intent that the questions as to which, if any, of the defendants is liable, and to what extent, may be determined as between the parties."

At the close of the entire case, counsel for the plaintiff was requested to elect as to which of the defendants he desired to hold responsible, and thereupon he elected to hold the plaintiff in error, "because it had been proved that said defendant, acting as principal or as agent for an undisclosed principal, had accepted the shipment as intermediate carrier from the Wichita Valley Railway Company, the initial carrier, and had transported the same to Boston, and on its arrival there had failed to deliver shipment to the next connecting carrier during the period from July 29, 1920, to February 10, 1921." By this election, the Clyde Steamship Company was eliminated.

[2] It is argued that there is evidence in the record indicating that the Clyde Steamship Company operated, maintained, and controlled the Boston pier, and did so as agent of the Mallory Steamship Company. The defendant in error seems to have been aware of the relationship between the Fleet Corporation and the plaintiff in error, for it pleaded the relationship of that agency in the complaint. The learned District Judge submitted the case to the jury upon the theory that liability might be imposed as against the plaintiff in error for tort, and this theory is based upon the failure to forward the cotton with reasonable dispatch. An authorized agent is not liable for breach of a contract which it makes on behalf of the principal, except where the agency is concealed, or where it is contracting as ostensible principal. Aldridge v. Muirhead, 101 U. S. 397, 25 L. Ed. 1013; The Jungshoved (C. C. A.) 290 F. 733; Walker v. Cross, 160 F. 372, 87 C. C. A. 324.

[3, 4] There was no allegation of the complaint which would support the theory of an undisclosed principal. The allegation sets forth the agency of the plaintiff in error, and the contractual relationship of its principal is pleaded and is admitted in the answer. While there are allegations in the complaint advancing claims of negligence, and therefore obligation in tort, still the proof upon which liability is sought to be imposed rests entirely upon the alleged inaction on the part of the plaintiff in error to forward the goods with dispatch from the Boston pier, or, in other words, the delay at the Boston pier is claimed to be an act of negligence. The only contractual relationship existing between the litigants results from the contract of carriage with the initial carrier. It contracted to convey the cotton from the point of delivery by the shipper to the port of destination. It was the duty of the initial carrier and each succeeding carrier to use reasonable diligence to deliver the goods to the succeeding carrier, or at least to make a tender of delivery. The first carrier is the forwarding agent of the owner. It and each succeeding carrier becomes the agent of the owner of the goods to make delivery to the next carrier, and it is incumbent on it, not only to do so to relieve itself from further obligation, but it is a duty which it owes to the owner, and which it has assumed with the acceptance of the goods.

The railroad bill of lading contained nothing to indicate that the Mallory Steamship Company held itself out to the railroad company or to the shipper as principal. It was issued on March 19th, three months before the goods were delivered to the steamer, and indicated a route "via Galveston, Mallory Line." The bill of lading was prepared by the railroad company, and the record is barren of proof which would indicate any participation, preparation, or issuance of the bill by the plaintiff in error. In the daily practice of such transportation and interstate shipments, such carriage is pursuant to way bills prepared under the terms with filed classifications and tariff which fix the terms of carriage for all carriers. The actual bill of lading did not come into the possession of the intermediate carriers of such shipments. The words "Mallory Line," written on the bill of lading routing, may or may not have meant a Shipping Board service, for it appears that the Mallory Line had an independent service from Galveston to New York; but a Shipping Board boat, for which the plaintiff in error was but agent, was selected to carry the goods upon delivery to it from the Wichita Valley Railway Company. The record discloses such to be the fact, even though the Mallory Steamship Company did have a regular service between points other than Galveston and Boston.

[5] There was delay in shipping because of the strike, and the goods were actually shipped from Port Arthur; but the fact remains that they were placed upon the Conotton, which was operated by the plaintiff in error as an authorized and disclosed agent. The initial carrier, as agent for the owner, is not shown to lack knowledge of the relationship

of the plaintiff in error with the Fleet Corporation in the operation of the ship. The record shows that the plaintiff in error did in fact both actually and ostensibly act as agent, and not as principal. Since it acted within the scope of its apparent authority in entering into a contract of carriage, the contract is that of the principal, the Fleet Corporation. All the rights and obligations which arise under it are those of the Fleet Corporation, and the agent cannot enforce the contract, neither is he bound by it. Sloan Shipyards v. U. S. Fleet Corp., 42 S. Ct. 386, 258 U. S. 549, 66 L. Ed. 762; King v. Lamborn, 186 F. 21, 108 C. C. A. 123; Mather v. Barnes (C. C.) 146 F. 1000.

Nor can liability be imposed upon the agent upon the theory of negligence in his failing to send forth the cotton with reasonable dispatch. Liability has been imposed below for the loss of market, because of failure to transport the goods. Liability may be imposed, where goods are damaged by a carrier, both in contract and in tort; but in the one case it violates the contractual obligation to use due care, and in the second case the obligation not to damage property by negligence. However, it is not a tort for a carrier to fail to forward goods promptly, nor is it for the agent of the carrier. The duty to transport promptly is derived from the contract of carriage. The default, if any, in forwarding the goods, is the failure to perform a contractual obligation; that is, to act as the forwarding agent for the owner under the carrier's obligation to deliver the goods to the next carrier. Hutchinson on Carriers, § 139.

[6] The Fleet Corporation may be liable to the shipper on its contract; the agent may be liable to the carrier for nonperformance of its duty as agent, but, having no privy of contract with the shipper, it is not liable to the shipper for breach of contract. Tuttle v. Gilbert Co., 13 N. E. 465, 145 Mass. 169. If the agent were guilty of nonfeasance in being delinquent in forwarding the cotton, that does not make him liable for misfeasance. The plaintiff in error may be liable to the defendant in error for its own misfeasance and positive wrongs, but it is not liable for its nonfeasance or omissions of duty in the course of its employment. In the latter cases, its liability is solely to its principal.

The reason for this rule is well stated, with citations, in Bryce v. Southern Railway Co. (C. C.) 125 F. 958: "No authority whatever from a superior to an inferior can furnish the latter a just defense for his own positive wrongs or trespasses, for no man can authorize another to do a positive wrong. But in respect to nonfeasances, or mere neglects in the performance of duty, the responsibility therefor must arise from some express or implied obligation between particular parties standing in privity of law or contract with each other, and no man is bound to answer for any such violations of duty or obligation except to those to whom he has become directly bound or amenable for his conduct." See, also, Kelly v. Chicago & Alt. Ry. Co. (C. C.) 122 F. 286.

The rule stated in 2 Shearman & Redfield on Negligence, § 343, is that "no agent of a private individual or corporation is ever liable to third persons for the failure to perform obligations of his principal and which the principal has employed him to perform but which he has not contracted with them to perform in their favor. In other words, he is not liable to them for his mere nonfeasance. He is consequently not responsible to them for any negligence in the performance of duties devolving on him purely from his agency, since he cannot as agent be subject to any obligations toward third persons other than those of his principal, and these duties are not imposed on him by law, nor has he agreed with anyone excepting his principal that he will perform them. In failing to do so he wrongs no one except his principal, who alone, therefore, can hold him responsible for his negligence."

If a duty rested upon the Mallory Line in its character apart from its agency, and was one that the law imposed upon it, independent of its agency employment, then it might be liable for tort. There must be some act of negligence or misfeasance to support an actionable tort as against the agent. It is more than a mere breach of the contractual obligation. In the charge, the jury were instructed that the failure to transport the goods promptly would account for the delay in delivering them to the next carrier, and would constitute negligence for which the plaintiff in error might be held responsible. This charge was erroneous. There was no evidence in the record which justified the court in submitting the issue of liability for misfeasance as against the plaintiff in error.

It appearing that there is no liability or legal responsibility for the delay of the shipment which might be imposed upon the plaintiff in error, the motion for a directed verdict should have prevailed.

Judgment reversed.

HAND, Circuit Judge (dissenting). I agree that the complaint is badly drawn, but it seems to me good after verdict, if read with section 213 of the New York Civil Practice Act. The fourth article alleges that the cotton was delivered to the Wichita Railroad, which issued a bill of lading to the plaintiff's agent, and that it was forwarded by the defendant, the Clyde Company, the Fleet Corporation, and the New Haven Railroad to the plaintiff at Natick, R. I. Article 6 alleges that the cotton was delivered by the Wichita Railroad to the "Mallory Steamship Company and/or Clyde Steamship Company as agents" for the Fleet Corporation, and article 8 that one or all of these three, together with the New Haven Railroad, was responsible for the delay. Considering the alternative form of pleading now permissible under section 213, this charged that the Wichita Railroad delivered the cotton to the defendant, a common carrier, as agent for the Fleet Corporation, and that the delay was due to it and the New Haven Railroad. The allegation of agency was not redundant, if the Fleet Corporation was to be held, and, redundant or not, it could do no harm, if in law the agency of the defendant did not absolve it from its duties as a connecting carrier. The defendant has succeeded upon the idea that this circumstance exonerated it, and it is from that conclusion that I dissent.

The facts are that the defendant, whose general business was that of a common carrier, was operating a ship owned by the United States under a contract with the Fleet Corporation. The contract described it as an agent, gave it only commissions, and required it to account for all profits, but also required it to equip, supply, and disburse the vessel, and to keep her seaworthy. Further the defendant was to "manage, operate, and conduct the business" of the vessel, to "perform all the customary duties of a managing and operating owner, * * * and all customary agency duties concerned with loading and discharging." It was to issue "to shippers customary charter parties, freight contracts, and bills of lading," and to collect all freights. We know nothing about the transaction, except that, while operating the vessel under this contract, the defendant received the cotton from the initial carriers, carried it to Boston, and discharged it on a pier, where it lay for an unreasonable period till delivered to the New Haven Railroad. This is the delay complained of.

On those facts it seems to me that the only possible conclusion is that the defendant as-sumed a duty or an obligation to deliver the cotton to the succeeding carrier, the New Haven Railroad, which it did not discharge, and that it is entirely irrelevant whether or not, in so doing, it was in fact acting as an agent for the Fleet Corporation. The liability of a carrier under such circumstances arises either upon a duty imposed by law, or upon a contract implied from acceptance. I do not see that it makes any difference which it is, though it is less artificial to regard it as a duty imposed, as it certainly has now become under the Carmack Amendment (Comp. St. §§ 8604a, 8604aa). Kansas City Southern Ry. v. Carl, 33 S. Ct. 391, 227 U. S. 639, 648, 57 L. Ed. 683. I shall consider the liabilities under either view.

If the liability sounds in contract, we are to suppose that the defendant made a promise to the Wichita Railroad, acting for the plaintiff, to transport the goods with customary dispatch. That is the only theory on which any contract could arise, and it has been several times countenanced, at least obiter. Briggs v. Railroad, 6 Allen (Mass.) 246, 83 Am. Dec. 626; Marq. Houghton & Ont. R. R. v. Kirkwood, 7 N. W. 209, 45 Mich. 51, 40 Am. Rep. 453; Dunham v. Boston & M. R. R. Co., 70 Me. 164, 35 Am. Rep. 314; Sherman v. Hudson River R. R. Co., 64 N. Y. 255, 261. This case depends upon whether the defendant's promise bound only the Fleet Corporation, or both it and the defendant as well. That is a question of intent, to be gathered from the expressions used, in this case to be imputed from the acts and mutual relations of the parties. If the principal is not disclosed at all, the agent is of course bound. Cobb v. Knapp, 71 N. Y. 348, 27 Am. Rep. 51; Bartlett v. Raymond, 30 N. E. 91, 139 Mass. 275. Indeed, he is bound if his principal's identity is not known, even though he be known to be acting as an agent. Horan v. Hughes (D. C.) 129 F. 248, affirmed 129 F. 1005, 64 C. C. A. 581 (C. C. A. 2); De Remer v. Brown, 59 N. E. 129, 165 N. Y. 410.

Hence the question here is whether the defendant was known to be acting on behalf of the Fleet Corporation when it accepted the cotton. The record is entirely barren on that subject, and the statement in the opinion of the court that it "did in fact actually and ostensibly act as agent, and not as principal," must rest entirely upon presumption. I agree that the plaintiff, having the burden, was bound to shown that the implied promise was made by the defendant on its own behalf, but that is the only reasonable inference from the

situation. The defendant was in fact a carrier, was operating a ship intrusted to it as a managing owner, was managing, directing, and conducting its business, and had complete charge of its personnel and supplies. It is most unnatural to suppose that, so conducting the business, it declared to shippers and connecting carriers that it was acting on behalf of the ship's owner. Prima facie, its ostensible relation would follow the contract under which it acted; it would appear to manage and conduct its business as owner, just as it had engaged to do. If so, I do not understand that my brothers mean to hold that it was not the promisor, and our difference apparently only concerns what are the reasonable presumptions. It is difficult to be dogmatic on such a question, and yet I must confess that it seems to me very clear.

If, on the other hand, the liability arises from a duty imposed by law and sounds in tort, the result is exactly the same. That duty is an incident to undertaking the business of a common carrier. If the defendant did not indicate to persons who dealt with it that it was acting for another carrier, it cannot escape. In that case it did all those things which a carrier does; that is equivalent to engaging in the business and the duties attached, nolens volens. The defendant's argument wholly misconceives the reasoning of those cases which exonerate employees of a carrier from liability for acts of omission. The duty is imposed upon him who undertakes the business, and employees do not do that. But a carrier may be no less in the business while acting for another, if he plays the part of a carrier, and he will play that part if he holds himself out as such by appropriate conduct. Therefore, again the question is merely whether, on this record, we should suppose that the defendant acted ostensibly as the carrier.

Finally, if the defendant was under an obligation or duty, it extended to a delivery to the connecting carrier, the New Haven Railroad. That duty it could not devolve upon the Clyde Steamship Company, certainly not itself in this respect a connecting carrier. Thus, it makes no difference whether the pier was in the possession of that company, of the Fleet Corporation, or of the defendant itself. In any case, it must perform or show some excuse, which it has not done.

I also think that the learned judge was correct on the point of damages, but, as my views are not to prevail, it is idle to give my reasons. Indeed, I should not have stated them so extensively, were it not that the case seems likely to recur, and to have an importance beyond that of the interests immediately involved. I think that the judgment should be affirmed.