**TEXACO, INC., Appellant,**

v.

**Mrs. Janetta VAUGHAN, Individually and as Next Friend and Guardian for Michelle Vaughan, et al., Minors, Appellees.**

No. 25252.

United States Court of Appeals Fifth Circuit.

June 12, 1968.

W. B. Browder, Jr., Midland, Tex., Stubbeman, McRae, Sealy & Laughlin, Midland, Tex., of counsel, for appellant.

Eugene Sherrod, Jr., Wichita Falls, Tex., Nelson & Sherrod, Wichita Falls, Tex., of counsel, for appellees.

Before RIVES, BELL and GOLD-BERG, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge:

Texaco appeals from a judgment entered on a jury verdict in a death action brought by Mrs. Vaughan and her children by reason of the death of the husband of Mrs. Vaughan, the father of the children. The amount of the verdict is not contested; the sole assignment of error is based on the contention that under the evidence and applicable law Texaco could not be held liable for the death of Mr. Vaughan. We affirm.

Texaco was the owner of the oil and gas lease on which an oil well pumping unit was being installed. Mr. Coffey was production superintendent for Texaco. He was named as a defendant but was absolved by the jury. Vaughan was employed by Yale E. Key Oil Well Service, an independent contractor employed by Texaco to place the pumping unit in operation.

The installation of the unit involved activity by four different groups, all in the category of independent contractors. They were selected and given direction as to sequence of activity by Mr. Coffey. The first activity consisted of moving the pumping unit, owned by Texaco and located at another site, to the site in question and setting it on concrete. This work was performed by the Flint Rig Company. The next activity was performed by a crew of Yale E. Key Oil Well Service under the supervision of Floyd Cole. The function of this crew was to service the pumping unit. This included starting the engine and airing up the air cylinder. Cole carried out this function and pumped 250 pounds of air into the cylinder. The engine was to be left running as was the practice. In order to leave the engine running without operating the entire pumping unit, it was necessary to remove six bolts from the sheave (fly wheel) where it connected to the pinion gear of the pumping unit. Cole removed these six bolts and left the engine running.

Meanwhile, Coffey ordered the rods which were to be run into the well and had them delivered to the site. He also engaged Kirkendall Service Company to set. the nipple in the well. Mr. Coffey testified that all of these things had to be done in sequence and had to be coordinated and timed and that he was the coordinator.

The last function in installing the pumping unit was to be performed by another crew of the Yale E. Key Oil Well Service under the direction of Mr. Condra, Sr. Vaughan was a member of this crew. They were to run the rods into the well and were then to mount the head on the pump jack and secure the rods to the head. The head, when attached, sits over the well hole and it was necessary to attach the head to the pump jack after the rods had been run into the hole. The rods had been run into the well and the next job was to lift and mount the head on to the beam of the jack. The head weighed several hundred pounds and was lifted by a winch.

Vaughan climbed up on top of the pumping unit and took a seat astride the beam so as to reach and position the head and the jack beam to secure the head in place. The rods had not been attached to the head. The sheave or fly wheel was being turned by hand by means of moving a belt so as to insert the six bolts which had been removed by Cole so that the unit would become operative. The beam on which Vaughan

was sitting was on the down stroke. It suddenly flew from the down stroke to the up stroke with great force throwing Vaughan some forty feet into the air and causing his immediate death.

Texaco had 350 pumping wells under the supervision of Coffey. The pumping unit being installed was of an air balanced type and was one of only two in use. It developed that none of the Yale E. Key employees at the site had any familiarity with such a unit. They were not furnished an operating manual with respect to the unit and the only person on the premises who understood that there was danger in the units becoming operative without having the load of the rods attached was Coffey, Texaco's superintendent. The testimony was that the accident would not have occurred had the rods been attached or if there had been no air in the cylinder. The testimony was that the movement of the sheave or fly wheel caused the pinion arm to leave dead center and activate the air pressure in the cylinder so as to throw the beam upward. This resulted from the air pressure in the cylinder not being offset by the load of the rods.

Texaco's motion for directed verdict was denied. The court was of the view that putting the air in the compressor created a dangerous condition under the circumstances which Coffey knew of but which was unknown to Vaughan or anyone in the independent contractor's crew.

■ The applicable Texas law, given in charge on the issue of negligence, is stated in Smith v. Henger, 1950, 148 Tex. 456, 226 S.W.2d 425 at p. 431, 20 A.L.R.2d 853:

"The law places upon the owner or occupant of land the duty to use reasonable care to make and keep the premises safe for the use of persons invited to use the premises for business purposes, * * *. Included within the class of persons to whom this duty is owed are the employees of contractors performing construction or other work on the premises. * * *

"Where the duty to keep premises in a safe condition is imposed on a person in control of them, this duty may include the duty to inspect the premises to discover dangerous conditions, * * * or to warn such persons of the existence of dangers which could not reasonably be expected to be apparent or obvious, * * *. The standard by which this duty is measured is that of reasonable care, and whether the duty has been properly discharged depends on the facts of each case."

See also Halepeska v. Callihan Interests, Inc., Tex., 1963, 371 S.W.2d 368. Cf. Texaco, Inc. v. Roscoe, 5 Cir., 1961, 290 F.2d 389, 390, where we pointed to the essentials of a claim by the employee of an independent contractor against the owner-occupier but concluded that the essentials had not been established.

■ We agree with the District Court that a jury question was presented on the issue whether Texaco was negligent in having failed to warn Vaughan of the dangerous condition existing in the installation of the pumping unit in view of the circumstances that Coffey knew of the danger, was the only person who knew of the danger, and was in control of the sequence of the various steps in the installation. The danger was hidden and inhered in the pumping unit. There was no evidence that Vaughan knew of the danger or that he should have known of the danger because it was open and obvious.

■■ Texaco also contends that the jury verdict was inconsistent in that Coffey was absolved while Texaco was held liable. We reject this assignment of error. Under the charge the duty to inspect and warn was on Texaco. The duty ran from Texaco to the decedent. There was no instruction or claim that Coffey owed a duty to the decedent by virtue of being an owner or occupier; Coffey's

duty was to Texaco as its employee. The jury was warranted in holding Texaco but absolving Coffey under the owner-occupier theory of duty and liability. Cf. Knight v. Atlantic Coast Line R. Co., 5 Cir., 1934, 73 F.2d 76, 77, 99 A.L.R. 405; Mallory S. S. Co. v. Garfield, 2 Cir., 1926, 10 F.2d 664, 667.

Affirmed.

RIVES, Circuit Judge (concurring specially):

I concur in the result and in all of the opinion except for the last paragraph. I agree also that the duty to inspect and warn was on Texaco. Whatever the source of Texaco's duty, it could be performed or not performed only by some employee. Coffey was the Texaco employee who had general superintendence over the installation of this pumping unit. I think that he owed to Vaughan the same duty as Texaco.

In their brief the appellees urge that, as to the personal liability of a servant to third persons, we should draw a distinction between malfeasance and nonfeasance.[1] The appellees cite Labadie v. Hawley, 61 Tex. 177, as showing that Texas "is among the states denying personal liability against a servant for personal injury resulting from 'mere non-performance.'" Later Texas decisions have emasculated any such holding.[2] I cannot escape the inconsistency of the verdict in holding Texaco liable while absolving Coffey.

Nonetheless, I concur in the judgment of affirmance, because I think that Texas is one of the few jurisdictions which has not adopted the rule that, where a master and servant are sued jointly and the servant is acquitted, there can be no recovery against the master.[3] The Texas cases hold that, though such a verdict has the appearance of being based on contradictory findings, the verdict against the master need not be disturbed.[4] For that reason, I concur in the result.

1. See Prosser on Torts, 3rd ed., pp. 334, et seq; 35 Am.Jur., Master & Servant § 585; Annot. 20 A.L.R. 158 and 99 A.L.R. 424.

2. See 28 Tex.Jur.2d § 260, p. 521; Cornett v. Hardy, Tex.Civ.App.1961, 241 S.W.2d 186, 190, last paragraph of first column; Kirby Lumber Corp. v. Walters, Tex.Civ. App.1955, 277 S.W.2d 796, 800, last paragraph of second column; Kenney v. Lane, 1894, 9 Tex.Civ.App. 150, 36 S.W.

1063, 1064 (this case contains a most interesting discussion).

3. See 57 C.J.S. Master and Servant § 619b, n. 20.

4. S. H. Kress & Co. v. Hall, Tex.Civ.App. 1941, 154 S.W.2d 278, 280; Texas & Pacific Ry. Co. v. Huber, Tex.Civ.App. 1906, 95 S.W. 568, 570; Gulf C. & S. F. Ry. Co. v. James, 1889, 73 Tex. 12, 10 S.W. 744, 746.