FELIX HARRIS, RECEIVER, v. H. W. FERGUSON.

No. 7706. Decided November 19, 1941.
(156 S. W., 2d Series, 135.)

*W. B. Harrell* and *Russell Allen,* of Dallas, for plaintiff in error.

In determining whether there is sufficient evidence to support a verdict and judgment, the appellate court must consider all facts and circumstances attending the transaction favorable to the verdict, rejecting all evidence hostile to it and indulging every legitimate inference and presumption which can be drawn to sustain it. Besteiro v. Besteiro, 65 S. W. (2d) 759; Galveston, H. & S. A. Ry. Co. v. American Grocery Co., 122 Texas 1, 36 S. W. (2d) 985; Cartwright v. Canode, 106 Texas 502, 171 S. W. 696.

*Hugh W. Ferguson, Jr.,* and *John W. Pope, Sr.,* of Dallas. for defendant in error.

It was error for the Court of Civil Appeals to hold that the issue of the conversion of the monies and funds of the corporation should have been subjected to the jury, as money is the subject of conversion only when it can be described or identified as a special chattel. Story v. Palmer, 284 S. W. 331; Smith v. Burns, 107 S. W. (2d) 397; 42 Tex. Jur., 515.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

This action involves the right of the Receiver of Dallas Mortgage Securities Company to collect the sum of $5,000.00 from H. W. Ferguson, alleged to be due by him on his stock subscription in the insolvent corporation.

The material facts are these: The defendant, H. W. Ferguson, was president of Farmers' Fund of Texas, a corporation later known as Dallas Mortgage Securities Company. On October 28, 1929, the capital stock of the company, in the amount of 20,000 shares of the par value of $10.00 per share, had all been issued and paid for, except 688 shares previously subscribed for by H. W. Ferguson. On that day Ferguson caused two certificates to be issued to him, No. 141 for 188 shares and No. 142 for 500 shares, and he drew his check, payable to the corporation, on the Republic National Bank of Dallas, for $6,880.00. It is admitted that he did not then have a large enough balance in his account to cover the check. On the next day, October 29, 1929, at a special meeting of the board of directors of the company, Ferguson represented to

the board that he desired to employ C. M. Reid as Executive Vice President of the corporation to handle city loans and that in order to obtain his services it would be necessary to pay him a salary of $10,000.00 a year, and, in addition, to give him a bonus of $5,000.00, payable immediatley. Accordingly, the board passed unanimously the following resolution:

"RESOLVED That C. M. Reid be elected a Director and Executive Vice President of the company for the remainder of the year 1929, at a salary of $10,000.00 per annum.

"Be it further resolved that said C. M. Reid be also paid $5,000.00 for his good will with investors, to be paid now, but with the understanding that said C. M. Reid secure and guarantee the delivery of said good will by depositing $5,000.00 of the capital stock of the company to be forfeited to the company if the company is not satisfied with the loan connections made by the company through the efforts of said C. M. Reid."

As a matter of fact, Reid testified upon the trial of this case that there was no understanding between him and Ferguson that he was to receive a bonus, and that Ferguson's representations in this respect were entirely false. He claimed that the only compensation that he was to receive for his services was the sum of $10,000.00 per year. In the same meeting of the directors, on October 29, 1929, after the passage of the above resolution, the directors, at the suggestion of Ferguson, voted to pay to their attorneys, for extra services rendered, the sum of $1,880.00, provided they purchase with such money 188 shares of the capital stock of the company. On November 29, 1929, apparently acting pursuant to the resolutions of the board, Ferguson caused the company to draw two checks, one for $1,880.00, payable to the order of the attorneys, and one for $5,000.00, payable to his own order. On the same day the attorneys delivered to him their check for $1,880.00, and he transferred to them Certificate No. 141, for 188 shares. He caused an entry to be made on the books of the company to the effect that the $5,000.00 was to be held for C. M. Reid "as per minutes." Next day, November 30th, Ferguson deposited in his own bank account the check for $1,880.00 from the attorneys and the $5,000.00 check issued by the company. On the same day the company deposited Ferguson's check, of date October 28th, for $6,880.00, and it was paid. Thereafter, on December 5, 1929, Ferguson, as president of the company, certified to the Secretary of State that the full amount of the authorized capital stock had been fully paid in.

After these transactions were completed, Certificate No. 142, for 500 shares, remained on the books of the company in the name of H. W. Ferguson, and there is evidence that he voted these shares on at least two occasions, along with other stock held by him. In 1936 new officers of the company were elected and an audit was made of the company's books, and it was then charged that the alleged agreement to pay Reid a bonus was entirely fictitious. Ferguson thereupon caused his attorney to address a letter to the new president of the company, enclosing Certificate No. 142, and stating that Ferguson did not then, and never did, claim those shares as his property, but that he had been holding same in trust for the company, in compliance with the above resolution.

This suit was brought by the new officers of the company on the theory that the bonus transaction was a fraud on the part of Ferguson, and that it was by means of such fraud that Ferguson obtained the money to pay his subscription for the 500 shares. The petition was in three counts: The first charging conversion of $5,000.00, the second charging conversion of the 500 shares, and the third charging an indebtness of $5,000.00 on Ferguson's subscription contract. Since the institution of the suit the company has gone into dissolution, and the receiver has been substituted as plaintiff.

As above stated, at the trial Reid testified that he had never demanded a bonus of $5,000.00, and that he had never heard about any such bonus until the new president of the company asked him about it, shortly before the suit was brought. The evidence strongly tended to show that the bonus was a scheme on the part of Ferguson to defraud the company of $5,000.00. Ferguson, however, testified that the transaction was genuine; that in carrying out the resolution of the directors he arranged for Reid to buy the 500 shares which had been issued to himself, and that the certificate, endorsed in blank, was deposited with the secretary of the company; that the check was made payable to him for convenience; that the stock was forfeited to the company, according to the terms of the resolution, upon the failure of Reid to secure the good will of investors as promised; and, therefore, the company suffered no loss.

The trial court refused to submit the issue of conversion of the money and conversion of the stock, as alleged in the first two counts of the petition, but did submit the issue of Ferguson's indebtedness on the subscription contract, as alleged in

the third count. The jury found that he was so indebted, and judgment was rendered against Ferguson for $5,000.00. On appeal the Court of Civil Appeals reversed the judgment, on the ground that the undisputed evidence showed that the subscription was fully paid by Ferguson's check of October 28, 1929, for $6,880.00, and that it was immaterial on the issue of indebtedness how he obtained the money to pay it; but it remanded the case to the trial court, with instructions to submit to the jury the issue of conversion of the money as alleged in the first count of the petition. 135 S. W. (2d) 595.

1   It is clear from the opinion of the Court of Civil Appeals that its holding that the evidence conclusively established, as a matter of law, that Ferguson had fully paid for the stock subscribed for by him, is based upon the conclusion that even though Ferguson, by the scheme herein-above outlined, fraudulently acquired $5,000.00 of the company's money and used same in paying the company for such stock, nevertheless, since the check given by Ferguson in payment for the stock was actually paid by the bank, necessarily the stock was thereby fully paid for. We are not in accord with this view. If Ferguson defrauded the company out of $5,000.00 and used same in paying the $6,880.00 check executed by him to the company, the jury had a right to assume that he was thereby merely returning that which he had wrongfully taken and that he was still indebted to the company for the stock. Corpus Juris announces the rule as follows: "Delivery to a creditor of his own money or property cannot be regarded as a payment, although accepted as such by him in ignorance of the facts." 48 C. J. 587. See also State Bank v. Welles, 3 Pick. (20 Mass.) 394; Moulton v. Robinson, 7 Foster's Reports (27 N. H.) 550.

2   The Court of Civil Appeals was therefore in error in holding that there was no evidence to support the jury's finding that Ferguson was still indebted to the company for the stock. However, Ferguson had an assignment of error in the Court of Civil Appeals to the effect that the evidence was *insufficient* to support such finding. The Court of Civil Appeals failed to pass on that assignment and we are without authority to do so. For this reason, the judgment of the Court of Civil Appeals as to Ferguson is reversed, and the cause is remanded to that court for further consideration not inconsistent with this opinion.

There was no appeal from that part of the judgment in

favor of Pool against the Receiver, and that part of the judgment is not here disturbed.

Opinion delivered November 19, 1941.