# CITY OF DENTON v. WHITE.
## No. 14587.

Court of Civil Appeals of Texas.
Fort Worth.

Feb. 11, 1944.

On Rehearing March 17, 1944.

Rehearing Granted March 31, 1944.

Second Rehearing Denied April 28, 1944.

Fred H. Minor and Lloyd L. Davis, both of Denton, for appellant.

Todd, Crowley & Gambill, of Fort Worth, for appellee.

McDONALD, Chief Justice.

Upon carefully considering appellee's motion for rehearing, and after again studying the record and the briefs of the parties, we are of the opinion that appellee's motion for rehearing should be granted, and that the judgment of the trial court should be affirmed.

Appellant's motion for new trial contains 203 numbered paragraphs. Its printed brief contains 209 pages, and presents 31 points of error. It will be necessary to write at some length to discuss all of the issues raised on appeal.

Andrew White was a laborer in the street department of the city government of Denton. Most of the time he operated a grading machine. Bailey Coffey had been foreman, or superintendent, of the street department for many years. On January 19, 1940, Coffey instructed several employees of the street department to haul gravel from a gravel pit near the City of Denton, from which appellant had taken gravel for several years. It appears that there were several pits on the land in question. Appellee was sent along to dig gravel and load it into the trucks. He testified that the truck drivers determined where the gravel should be dug, and that the laborers dug at the point where the truck was stopped by the driver. Appellee, at the time he was injured, was digging in one of the pits, near the east wall of the pit. The wall of gravel which constituted that side of the pit was about fifteen feet high. While appellee was digging at this place the wall of gravel caved in, completely burying him. His fellow employees dug him out. He received serious injuries. The weather had been cold and rainy immediately prior to the date in question, and on the day of the cave-in the temperature was about seventeen degrees above zero. Appellee's theory of the cause of the cave-in is that there

was a dry weather crack on the top and near the edge of the wall, and that the freezing of snow and ice in the crack brought about an expansion which produced the cave-in. There is evidence to support this theory, and the jury found that such was the cause of the cave-in.

White recovered judgment in the court below, and the City of Denton has appealed.

Appellant's first contention is that appellee is cut off from a recovery because he did not give appellant notice of his claim for damages within the time required by ordinance of the City of Denton. We are of the opinion that the contention should be overruled under authority of City of Waco v. Thralls, Tex.Civ.App., 172 S.W.2d 142, writ refused for want of merit. Without detailing the facts in the present case, it may be said that we have somewhat the same situation here as appears in the Thralls case.

Appellant filed a plea in abatement, setting up the failure to give notice as required by the ordinance. A separate hearing was had on the plea in abatement. Appellant proved the ordinance, but appellee did not offer evidence of the facts upon which he relied as a sufficient excuse for failure to give notice. Appellee had, in his petition, alleged that he did not give notice within the required time, but alleged the facts upon which he relied to relieve him from the consequences of such failure. The trial court overruled the plea in abatement. The matter was fully gone into upon the trial on the merits, and issues touching the matter were submitted to the jury, and answered favorably to appellee. It seems to us that the matter set up in the plea in abatement was not a matter in abatement, but was rather a matter in bar, which properly was determined upon the trial on the merits. In 1 C.J.S., Abatement and Revival, § 5, p. 32, it is said:

"Matter in bar is that which attacks the maintenance at any time of any action upon the supposed cause of action; matter in abatement is that which merely defeats the present proceedings; and a similar general distinction prevails between pleas in bar and those in abatement with some qualifications incident to the formal requisites of each type of plea."

Appellant next contends that it should have had an instructed verdict, or else judgment non obstante veredicto, both upon the ground that there is no evidence of negligence on the part of appellant, and upon the ground that the evidence shows con-tributory negligence as a matter of law. Alternatively, appellant contends that the evidence is insufficient to support the findings of negligence on the part of appellant, and to support the findings exonerating appellee of contributory negligence.

The jury found that the following constituted negligence on the part of appellant proximately causing appellee's injuries: (1) Failure to provide appellee a safe place in which to work. (2) Failure of appellant's foreman Coffey to cause any inspection to be made of the gravel pit and surrounding area. (3) Failure of appellant's foreman Coffey to have anyone supervise and direct the work that appellee was doing. (4) Failure of appellant's foreman Coffey to furnish the services of an expert trained in the operation of gravel pits and the removal of gravel therefrom to ascertain whether it was safe to do the work. (5) Failure to furnish an expert to see to it that the gravel was removed from the pit in a safe manner. (6) Failure of appellant's foreman Coffey to warn appellee that the pit was a dangerous and unsafe place in which to work. (7) Causing or permitting the work to be done in such manner as required appellee to work next to the wall of the pit. (8) Requiring appellee to work in the pit when the ground was frozen. (9) Causing appellee to go into the pit when appellant's foreman knew or by the exercise of due care could have known that the weather made the pit unsafe. The jury also found that appellant's agents by the exercise of ordinary diligence could have discovered prior to the cave-in the existence of the crack and the frozen snow and ice in it.

Under the familiar rule, we will consider only the evidence which tends to support the verdict, and the inferences which can reasonably be drawn therefrom, and disregard the evidence to the contrary.

That the master in this case failed to provide the servant with a safe place in which to work is established conclusively by the fact that the wall of gravel caved in and seriously injured the servant. The master is not an insurer, but he is required to exercise ordinary care to provide a safe place to work. The inquiry therefore is whether, in view of the jury findings, there is any evidence of probative value tending to show that ordinary care was not exercised by the master and that such failure, if any, was a proximate cause of appellee's injuries.

Although there is a general finding of negligence in failing to provide a safe place to work, it will perhaps be better to consider separately the specific findings of negligence.

Bailey Coffey was appellant's foreman, in charge of the street department in which appellee was employed. Coffey sent the employees of the street department out to the gravel pits on the day in question. He testified that he had had many years experience in removing gravel from gravel pits. Appellant had been getting gravel from these particular pits for three or four years. Coffey said that he knew that cave-ins would happen, especially where there was a wall straight up and down. He said that from his experience he knew that it was something to look out for. If there had been a crack where the cave-in occurred that would help explain why it caved in and that was why he went out to the pit the next day, to quote him, "looking for it to see where the crack was that caused the cave-in". If the crack was in the ground he knew, he said, that if snow and ice got down in it and froze it would tend to push the crack out. It appears to be undisputed that there was no inspection made of the top of the gravel bank before the men went to work.

The authorities are all clear to the effect that the master must exercise ordinary care to inspect the place where his servants work. The amount and kind of inspection which will constitute ordinary care will vary with the circumstances. For many cases announcing the rule, and for a statement of the rule, see 29 Tex.Jur., p. 152, where it is said that the duty to inspect is a non-delegable duty of the master, and that the master is liable for the default of a representative to whom such duty is entrusted. The duty to inspect places and appliances is a corollary of the duty of maintenance. Bailey Coffey was the representative of appellant who sent appellee to work in the unsafe gravel pit. It is undisputed that Coffey did nothing whatever with respect to inspecting the pit, although it is clear from his testimony that he realized the danger of a cave-in of a high wall. We believe that the jury were warranted in concluding that Coffey, in the exercise of ordinary care, should have made an inspection or had it done before sending his men into the pit.

The jury also found that appellant, through its foreman Coffey was negligent in failing to have anyone supervise and direct the work that appellee was doing on the occasion in question. The testimony seems to be that several trucks and men were sent out to haul gravel, and that no one was placed in charge of the group, except that there is evidence suggesting that the truck driver exercised authority to select the place where gravel should be dug. We believe that the jury, in view of Coffey's knowledge of these pits and of the fact that a wall of gravel could be dangerous, were warranted in concluding that it was negligence on Coffey's part not to place some one in charge of the work.

The jury found that appellant through Coffey was negligent in failing to furnish the services of an expert trained in the operation of gravel pits and the removal of gravel therefrom to ascertain whether it was safe to do the work before the work was done. Appellant argues that the evidence fails to show even that there are any such experts, and that in no event was appellant obligated to furnish some highly trained expert in connection with this simple operation of digging gravel with a pick and shovel. We do not agree with appellant's construction of the term expert, as applied to the facts of this case. The term does not necessarily mean, and often does not imply, a person highly educated and receiving a large salary. A small boy may be an expert in the handling of a toy. A housewife may be an expert in the art of cooking biscuits. A woodchopper may be an expert in the work of cutting up cordwood. A man who had not been around gravel pits might not understand the danger of a cave-in, and might not know how to inspect the wall and surrounding area to determine whether there was a danger of a cave-in. Mr. Coffey, on the contrary, who had been engaged in such work for many years, might have been able to look at the wall and the surrounding area and realize the danger of a cave-in. The evidence presents a jury issue.

The jury found that appellant through its foreman Coffey was negligent in failing to warn appellee that the pit was a dangerous and unsafe place in which to work. The evidence is undisputed that appellee was given no such warning. The duty of the master to warn against dangers is thus stated in Beaumont, S. L. & W. R. Co. v. Schmidt, 123 Tex. 580, 72 S.W.2d 899, 902:

"The nondelegable duty of warning an inexperienced servant of the dangers incident

to his employment is also imposed upon the master, 29 Texas Jurisprudence, pp. 152, 159; 18 R. C. L. pp. 732-733. The inexperienced servant should be given full information. Missouri Pac. R. Co. v. Watts, 64 Tex. 568. While the master is under no obligation to caution experienced servants of dangers which are open and palpable (29 Tex.Juris., p. 159) it is his duty to warn even them of dangers which are latent, abnormal, or unusual. (Citing Authorities). When the danger is hidden or unusual, the warning should be commensurate with the risk * * *."

■ There was testimony which the jury might have believed to the effect that appellee had not worked very much in gravel pits, that he had been in the pits on the land in question only once before, and that he had never before been in the pit which caved in. They could reasonably have believed that Mr. Coffey should have warned appellee of the danger of working in this pit which proved to be dangerous, and that he was negligent in failing to do so.

■ The jury found that appellant was negligent in requiring appellee to work so near the wall of the pit, and in working in the pit when the ground was frozen. We think there is evidence to support these findings. But even if there is none, the jury found appellant guilty of other acts of negligence sufficient to establish liability.

We come now to the issues regarding contributory negligence.

■ The jury found that appellee was not negligent in failing to inspect the wall of the pit. The evidence supports this finding. The relative duties of master and servant, with regard to inspection of the place of work, are discussed at length in such cases as Galveston, H. & S. A. R. Co. v. Lempe, 59 Tex. 19; Bonnet v. Galveston, H. & S. A. R. Co., 89 Tex. 72, 33 S.W. 334; Peck v. Peck, 99 Tex. 10, 87 S.W. 248; and Gammage v. Gamer Co., Tex.Com.App., 209 S. W. 389.

■ Those opinions declare that it is the master's duty to inspect the premises, and that ordinarily the servant may enter upon his work with the assumption that the master has fully performed his duty with respect to furnishing a safe place to work. The exceptional case is where the servant actually knows of the dangerous condition of the place of appliances, or where the danger is so open and obvious that a person of ordinary prudence would have observed the dangerous condition. Also, it is not enough, to preclude a recovery by the servant, that he be familiar with the situation, but he must know of the danger in the situation. At one point in his testimony appellee said, "Any high wall of gravel looks dangerous to me". Appellant contends that this statement alone is sufficient to charge appellee with actual knowledge of the dangerous character of the situation. But at another point in his testimony appellee was asked: "Did you observe anything about the east wall of that pit that appeared to be dangerous?" His reply was: "You couldn't tell. It was just a wall of gravel standing up there." At another point he was asked: "And you couldn't tell from looking at it whether it was likely to cave or not?" He replied: "Not just to look at it." At another point he testified: "I wouldn't have been there if I had known there was any danger it might fall on me." It is undisputed that appellee did not go up on top of the gravel bank, and it is not contended that he knew of the crack near the edge of the bank or the ice and snow down in the crack. It was a jury question whether appellee was negligent in failing to inspect the premises.

The jury found that appellee was negligent in working near the wall of the pit, knowing that it had an overhang, but that such negligence was not a proximate cause of his injuries. It is a common occurrence for a jury to find negligence and not find proximate cause. The answers of the jury to the issues submitted, taken as a whole, indicate that the jury were careful in making their answers, and did not undertake simply to answer all issues favorably to appellee. The jury may have thought it negligent to work near an overhanging wall, and yet have thought that the proximate cause of the cave-in was not the overhang, but the crack in the ground coupled with the presence of the ice and snow in the crack, and that appellee could not reasonably have foreseen that a cave-in would result from the unusual conditions he knew nothing about.

■ The jury found that appellee, by the exercise of ordinary care, could have learned that the wall of the pit was unsafe, but that his failure to do so was not a proximate cause of his injuries. The test is not whether the servant could have learned of the danger, it is whether he should have learned of the danger. The jury was not asked whether the failure to

learn of the danger was negligence. Under the authorities above cited, the servant is not charged with knowledge of dangers he could have learned about, he is charged only with knowledge of dangers he ought to have learned about.

The jury found that appellee did not believe that the place was unsafe at the time he entered it. We think that the testimony of the appellee, above set out, supports this finding.

The jury found that appellee did not have equal facility with appellant and its foreman to determine whether the place was safe. There is, we think, evidence to support the answer. Appellee had never been in this pit before, had been on this farm only once before, and had had only a limited experience in gravel pits. The foreman, on the contrary, had had many years of active experience in such work, and appellant had been taking gravel from these pits for several years.

Other somewhat similar issues were submitted, and answered favorably to appellee. What has been said applies to them.

We cannot see that an instructed verdict should have been granted. Nor can we see that the record warrants a reversal and remand on the ground that the evidence is insufficient to support the verdict. The rule governing us in the latter situation is thus stated in 3 Tex.Jur. 1097:

"The mere fact that a verdict is against the preponderance of the evidence will not authorize the Court of Civil Appeals to set it aside, if there is some evidence to support it. The appellate court will set aside the verdict and findings of the jury only in cases where they are so against a preponderance of the evidence as to be clearly wrong, show passion or prejudice, or in such obvious conflict with the justice of the case as to render them unconscionable."

We do not find anything unconscionable in the verdict, nor does it, to our minds, show passion or prejudice. Appellant sent its servant into a dangerous place to work. It made no inspection, it gave him no warning of the danger, it placed no one in charge who was an expert in the handling of such kind of work, it did nothing, in fact, to protect its servant in this dangerous situation.

Appellant complains that the various issues inquiring about appellant's negligence constitute a submission to the jury of six different variations of a single theory of recovery. It does not so appear to us. It is true that all rest in a sense upon the single fact that ice and snow froze in the dry weather crack, but they also rest upon the single fact that the wall caved in, and upon the single fact that appellee was injured. The discussion of the several issues of negligence contained above, demonstrate, we believe, that no error was committed in this respect.

Appellant contends that there was no evidence to support the submission of some of the issues, and that the mere submission of them led the jury to believe that appellant owed duties to appellee which in fact it did not owe. If it be conceded, for the sake of argument, that there was no evidence to support such issues, there is no reversible error unless some harm was done to appellant. Appellant's complaint narrows down to the proposition that the jury were influenced to answer some of the issues favorably to appellee because other issues were improperly submitted to them. The contention must be overruled, if for no other reason, because neither the objections to the charge nor the motion for new trial raises the question that the submission of the issues complained of would affect the answers to other issues. This question is raised for the first time on appeal. Under familiar rules the objections to the charge, as well as the assignments of error, set out in the motion for new trial, cannot be enlarged upon appeal. The contention must be overruled for the further reason that it does not appear to us, from the record as a whole, that the submission of the particular issues complained of affected the answers to any other issues. The best evidence that the jury were not improperly influenced is the fact that they answered some issues favorably to appellant.

Appellee was injured on January 19, 1940. Appellant thereafter paid him his salary for several months, and for a few more months paid him half his salary. The total amounted to $2300. In connection with the damage issue the court gave the following instruction:

"You will, in answering No. 26, consider as a whole plaintiff's damages, if any, suffered by reason of the cave-in, without taking into consideration the amount already paid to the plaintiff by the defendant."

The damages found were $8500.

Appellant contends that the charge authorized a double recovery, in that the gen-

eral instruction authorized the jury to take into consideration decreased capacity to labor and earn money. The exact language of this particular portion of the general instruction is, " * * * you will take into consideration * * * decreased capacity to labor and earn money suffered by him on account of such injuries, if any, and such decreased capacity to labor and earn money that you may find he will reasonably suffer in the future * * *." The instruction also allows recovery for pain and anguish, both past and future. It is to be noted that the general instruction allows recovery for decreased capacity to earn, and that the special instruction orders the jury not to take into account the money theretofore paid to appellee. The most favorable interpretation to appellant is that the verdict includes the $2300, and that it is a question of law whether it should be deducted therefrom. Appellant argues elsewhere in its brief that its payment to appellee was an act of generosity, prompted by humanitarian motives. Appellee's capacity to earn was reduced to the same extent by his injuries whether appellant made the gratuitous payments to him or not. Appellant has not in its pleadings sought any credit for the $2300. If the payment was an act of generosity, as declared in appellant's brief, we do not see upon what ground appellant could recover it, or receive credit for it.

Other points of error are presented in the brief, but would not, if sustained, bring about a reversal. It is unnecessary therefore to pass upon them.

Appellee's motion for rehearing is granted, our former judgment reversing and remanding is set aside, and our former opinion is withdrawn.

The judgment of the trial court is affirmed.

### On Motion for Rehearing.

We have concluded upon further consideration that the trial court erred in instructing the jury, in connection with the damage issue, not to take into consideration the $2,300 in salary paid by appellant to appellee after the injury. Appellee in his pleadings alleged that appellant continued to pay him his salary for the months in question, and testified to the same effect. The Mayor also testified that the salary payments were continued after the injury in accord with a policy of the City to pay salaries to employees who became ill or were injured. To uphold the court's instruction, we would have to say that the evidence is undisputed that the payments were a gift, and not salary. This we cannot say in view of appellee's own pleadings, as well as the evidence to the contrary. In the ordinary case the burden would be upon a defendant to plead mitigation of damages, or payment on the claim, but in the case here plaintiff both pleaded and proved the facts which, to say the least, raised the issue of mitigation of damages.

Our former judgment of February 11, 1944, affirming the judgment of the trial court, is hereby set aside. If appellee will file a remittitur of $2300 within fifteen days from this date, the judgment of the trial court will be reformed accordingly, and as reformed, will be affirmed; otherwise the judgment of the trial court will be reversed and the cause remanded. At the time we enter final judgment, as just indicated, we will grant both parties leave to file motions for rehearing within fifteen days from that time.

### Opinion.

On February 11, 1944, we rendered judgment affirming the judgment of the trial court. Thereafter appellant filed its motion for rehearing. On March 17, 1944, upon considering appellant's motion for rehearing, we set aside our former judgment of February 11, 1944, affirming the judgment of the trial court, and by an opinion in writing indicated that if appellee would file a remittitur of $2300 within fifteen days from that date, the judgment of the trial court would be reformed accordingly, and as reformed, would be affirmed, and that otherwise the judgment of the trial court would be reversed and the cause remanded.

Appellee has filed herein a remittitur of $2300.

Accordingly, as of this date, the judgment of the trial court is reformed by deducting the amount of $2300 from the judgment recovered by appellee, and as so reformed, is affirmed.

Appellant's motion for rehearing is granted in part, and overruled in part, as above indicated.