MARY LILLIAN SMITH AND TEXAS EMPLOYERS INSURANCE
ASSOCIATION V. W. C. HENGER, DOING BUSINESS AS
HENGER CONSTRUCTION COMPANY.

No. A-2313. Decided January 11, 1950.
Rehearing overruled February 15, 1950.
(226 S. W., 2d Series, 425)

*Carter, Gallagher & Barker,* and *Howard Barker* and *Ben T. Warder, Jr.,* all of Dallas, for petitioner Mary Lillian Smith, *Burford, Ryburn, Hincks & Ford, Logan Ford* and *Roy L. Cole,* all of Dallas, for Texas Employers Insurance Company, petitioners.

The majority of the Court of Civil Appeals erred in holding that Henger was not negligent in failing to inspect the shaft because it was Henger's duty to warn employees of independent contractors, such as Smith, of hidden and latent dangers, and in fulfilling such duty a continuing inspection of the premises was required of Henger, who was also required to furnish said employees a reasonable safe place to work. Montgomery v. Houston Textile Mills, Com. App., 45 S. W. (2d) 140; Walgreen-Texas Company v. Shivers, 137 Texas 493, 152 S. W. (2d) 625; Keihling v. Humes-Deal Co., 16 S. W. (2d) 637.

The judgment of the trial court allowing reasonable attorney's fee to the intervenor insurance company, should be sustained. Traders & Gen. Ins. Co. v. West Texas Utilities Co., 140 Texas 57, 165 S. W. (2d) 713; Hartford Acc. & Indm. Co. v. Weeks Drug Store, 161 S. W. (2d) 153; Wilhelm v. Hersh, Mo., 50 S. W. (2d) 735.

*O. O. Touchstone,* of Dallas, for respondent Henger.

There was no error in the judgment of the Court of Civil Appeals, because there was an absence, or insufficiency, of facts upon which neither a finding of negligence, nor proximate cause, could be sustained against the respondent. Houston Natl. Bank v. Adair, 146 Texas 387, 207 S. W. (2d) 374; Loyd v. Herrington, 143 Texas 135, 182 S. W. (2d) 1003.

MR. JUSTICE HART delivered the opinion of the Court.

Haskell Smith brought this suit against W. C. Henger, doing business as Henger Construction Company, for damages for personal injuries alleged to have been sustained by Smith as a result of falling into a shaft being used in the construction of the Mercantile Bank Building in Dallas, while Smith was working on the job as an employee of Westheimer Rigging and Heavy Hauling Company. Texas Employers Insurance Association, the insurer of Smith's employer, intervened asserting its right to subrogation to the extent of workmen's compensation and medical and other expenses that it had paid to Smith, and also claiming a right to recover an attorney's fee. The plaintiff and the intervener recovered judgment in the district court, but the Court of Civil Appeals, one judge dissenting, reversed and rendered judgment in favor of Henger. 222 S. W. (2d) 422.

■ We are faced at the outset with Henger's attack on the jurisdiction of this court on the ground that the application for writ of error was prosecuted in the name of Mary Lillian Smith, the widow of Haskell Smith, individually and as administratrix of the estate of her deceased husband. It appears from the record that after perfection of the appeal to the Court of Civil Appeals and before the final disposition of the case by that court, Haskell Smith died and his widow filed a motion to be substituted as appellee in lieu of her deceased husband. The Court of Civil Appeals granted this motion. Henger takes the position, however, that under Rule 369-a, Texas Rules of Civil Procedure, Mrs. Smith had no right to be substituted as a party or to prosecute the application for writ of error in this court. Rule 369-a reads as follows:

"Rule 369-a. No Abatement for Death.—If any party to the record in a cause dies after rendition of judgment in the trial court, and before such cause has been finally disposed of on appeal, such cause shall not abate by such death, but the appeal may be perfected and the Court of Civil Appeals or the Supreme Court, if it has granted or thereafter grants a writ

therein, shall proceed to adjudicate such cause and render judgment therein as if all the parties thereto were living, and such judgment shall have the same force and effect as if rendered in the lifetime of all the parties thereto. If appellant dies after judgment, and before the expiration of the time for perfecting appeal, sixty days after the date of such death shall be allowed in which to perfect appeal and file the record, and all bonds or other papers may be made in the names of the original parties the same as if all the parties thereto were living."

Rule 369-a, as originally adopted in 1941, was based on the provisions of Articles 1760 and 1850, R. C. S. 1925, and applied to the situation where the party died after the perfection of the appeal to the Court of Civil Appeals. These statutes or similar statutes in earlier revisions were construed in Coe v. Nash, 91 Texas 113, 41 S. W. 473; Conn v. Hagan, 93 Texas 334, 55 S. W. 323; Ellis v. Brooks, 101 Texas 591, 102 S. W. 94, 102 S. W. 1196; and Wootton v. Jones, Tex. Civ. App., 286 S. W. 680, writ dismissed, but none of these cases involved the question now before us. As amended in 1943, Rule 369-a applies if a party dies at any time after judgment is rendered in the trial court.

Under Rule 369-a, it undoubtedly would have been proper to proceed with the case after Haskell Smith's death as if he were still living, without any substitution of parties. Of course this procedure in any case is fictional, because after the death of the party the prosecution of the suit must in fact be by the person or persons who have succeeded to the decedent's interest, either in their individual or representative capacities or both. The purpose of the rule is to simplify and expedite the disposition of cases on appeal; it has no effect on the substantive rights of the litigants. Compare Galveston City Ry. Co. v. Nolan, 53 Texas 139, 146, which construed a statute containing similar provisions. Eventually the benefit or burden of the final decision of the appeal will belong to the deceased party's successor or successors in interest. See Rules 623-626, T. R. C. P.

We have concluded that Rule 369-a should not be construed to prohibit the substitution of the executor, administrator, heir, or other successor in interest of a party who dies while a case is on appeal. Substitution of parties is required in the trial courts where a party dies before judgment, Rules 150-156, 158, and 159, T. R. C. P., and on principle we can see no reason why it should not be permissible, although not required, where the party dies after judgment.

In cases where there was no applicable statute or rule permitting the case to proceed on appeal as if the deceased party were still alive, it has been held that substitution of the executor, administrator or heir of the deceased party was proper. Teas v. Robinson, 11 Texas 774; Gibbs v. Belcher, 30 Texas 79; Simmons v. Fisher, 46 Texas 126; Stroud v. Ward, Tex. Civ. App., 36 S. W. (2d) 590. In the first case cited, after pointing out that no express statutory provision applied, Chief Justice Hemphill said: "But, in analogy to the provisions against abatement in the Acts regulating proceedings in the District Courts, and from the necessity of the case, and that the parties should not be living persons, but be vested with, or have some control over, the interest to be affected, it has been the practice in all cases, in which the original parties have become disabled by death, or otherwise, to substitute others who represent or control the interests involved in the litigation, and to give judgment for or against them as persons legally authorized to appear in the suit." 11 Tex. at page 776.

In Miller v. Dyess, 137 Texas 135, 151 S. W. (2d) 186, 137 A. L. R. 578, the death of a party was suggested in a motion filed in the Court of Civil Appeals at a time when it was held that neither Article 1850 nor Article 1760 applied, after final decision by the Court of Civil Appeals but before the filing of the application for writ of error. No action was taken on this motion by the Court of Civil Appeals, and the application for writ of error was filed in the name of the deceased party, by his widow, who was also his executrix. This court said that it would regard the application for writ of error as being prosecuted by the widow, as executrix and as owner under the will of the land involved in that case, and refused a motion to dismiss for want of jurisdiction.

■ Under Article 2277, R. C. S. 1925, and its predecessors in earlier revisions, it has been held that where the party died after judgment in the trial court but before the perfection of the appeal, the appeal had to be taken in the name of the executor, administrator, or heir, and that an appeal or writ of error prosecuted in the name of the deceased party would be dismissed. Bargna v. Bargna, Tex. Civ. App., 157 S. W. 754, writ dismissed; Saner-Ragley Lumber Co. v. Spivey, Tex. Civ. App., 230 S. W. 878, 883 (reversed on other grounds, Tex. Com. App., 238 S. W. 912) ; 3 Tex. Jur., Appeal and Error, sec. 109; 1 Tex. Jur., Abatement and Revival, sec. 53. Compare Simmang v. Cheney, Tex. Civ. App. 155 S. W. 1198. The 1943 amendment to Rule 369-a changed this rule, making it proper

to perfect the appeal or prosecute the writ of error as if the party had not died. For this reason, Article 2277 was listed as repealed in our order relating to the Rules of Civil Procedure dated October 12, 1949. However, it was not intended by this notation in our order to make the method set out in Rule 369-a exclusive, and it is still permissible, in case of the death of any party entitled to an appeal or writ of error, for the executor, administrator or heir to prosecute the appeal or writ of error.

■ The respondent in this case argues that Mrs. Smith might derive some benefit from the allegations in the motion to substitute parties to the effect that Haskell Smith died from the effects of the injuries that are the basis of this suit. However, the cause of the decedent's death is of course entirely immaterial so far as this appeal is concerned, and such allegation could have no influence on the appellate courts' decision, which on the merits must be based on the record before the trial court. Therefore, while it was not necessary for the petitioner to be substituted for her deceased husband, we think that no harm can come from such substitution and that after the substitution was allowed in the Court of Civil Appeals, it was proper for Mrs. Smith to file the application for writ of error in her name.

■ Jurisdiction of the application for writ of error filed by Texas Employers Insurance Association is also attacked on the ground that its rights in the cause are dependent upon the claim of the injured employee. This contention is based on the premise that Mrs. Smith was not a proper party to file an application for writ of error, and since we have held that she properly filed the application for writ of error in her name and that we have jurisdiction of her application, the ground for this attack on the application of Texas Employers Insurance Association fails. Moreover, under Article 8307, section 6a, the insurer is expressly given the right to enforce its rights of subrogation in its own name, and it follows that it could prosecute its application for a writ of error, even if the employee or his successor in interest failed to file an application for writ of error.

On the merits, the primary question is whether any legal duty upon Henger to use reasonable care to furnish Smith with a safe place to work. Henger's relationship to the work of constructing the bank building was somewhat unusual. The work of construction had progressed to the point where the basements and several floors above ground had been partially constructed before Henger was called in. Up to that point, the bank had made contracts with various other contractors for the performance of different parts of the work and the bank

had undertaken to supervise the job through its own employees. An agreement was then made between the bank and Henger providing that for a fixed fee Henger would provide "a complete and competent job organization" sufficient to supervise and coordinate the construction of the building so that the work would be done in accordance with the plans and specifications of the architect. The contract called Henger "General Contractor" but it was provided that this designation should not in any way "increase or decrease it (Henger's) obligation, duties and liabilities as a general supervisor and coordinator of the construction" of the bank building. The agreement referred to construction contracts already made by the bank, and the exclusive right was retained by the bank to make all additional contracts for construction and materials which it deemed proper for the completion of the building. The agreement expressly provided that Henger should "have exclusive control of the supervision and coordination of the construction of said building under said contracts and the contracts hereafter to be made by" the bank.

In the performance of his contract with the bank, Henger took over the control and supervision of the entire construction site. Henger himself testified that, "In my capacity as coordinator for the bank, it was my duty to see that everything was as safe as could be," and that the premises over which his control extended included the shaft where Smith was hurt. For the purpose of carrying out his contract, Henger maintained a staff of employees on the job, including three guards or watchmen, one of whom was stationed at a point about thirty feet from the shaft where Smith was hurt.

■ Under the terms of the contract and the evidence showing the actual control exercised by Henger over the entire premises, we think that Henger was charged with the legal duty usually resting upon a general contractor to use reasonable care to furnish a safe place to work for the employees of other contractors performing work on the job. The facts that in this particular contract Henger did not assume the usual obligation of a general contractor to furnish all of the labor and materials to construct the building, that he worked for a fixed fee, and that he had no authority to make subcontracts, do not affect the question before us. These features of the contract relate mainly to the relations between the bank and Henger. We are only concerned with the existence and the extent of the control and supervision over the premises which Henger exercised. The provisions of the contract and Henger's conduct after he began

to perform it show that so far as the control and supervision of the premises were concerned, Henger assumed the usual duties and responsibilities of a general contractor.

The law places upon the owner or occupant of land the duty to use reasonable care to make and keep the premises safe for the use of persons invited to use the premises for business purposes, Carlisle v. J. Weingarten, Inc., 137 Texas 220, 152 S. W. (2d) 1073; Restatement, Torts, sec. 343; 38 Am. Jur., Negligence, sec. 96. Included within the class of persons to whom this duty is owed are the employees of contractors performing construction or other work on the premises. Galveston-Houston Electric Ry Co. v. Reinle, 113 Texas 456, 258 S. W. 803; Montgomery v. Houston Textile Mills, Tex. Com. App., 45 S. W. (2d) 140; Snelling v. Harper, Tex. Civ. App. 137 S. W. (2d) 222, writ dismissed, correct judgment. When the owner puts some other person in control of the premises or a part of them, such person likewise has the duty to keep the premises under his control in safe condition. Fox v. Dallas Hotel Co., 111 Texas 461, 240 S. W. 517; Restatement, Torts, sec. 387; 38 Am. Jur., Negligence, sec. 94. A general contractor on a construction job, who is in control of the premises, is burdened with the duty to use due care to provide a safe place for workmen on the premises, including the employees of other contractors. Wilson v. Hibbert, 3 Cir., 114 C. C. A. 542, 194 Fed. 838; Gucciardi v. Chisholm, 2 Cir., 145 Fed. (2d) 514; Kuptz v. Ralph Sollitt & Sons Const. Co., 5 Cir., 88 Fed. (2d) 532; Steele v. Grahl-Peterson Co., 135 Iowa 418, 109 N. W. 882; Henry Pierson & Sons v. Gohr, 126 Md. 385, 94 Atl. 1021; Kiehling v. Humes-Deal Co., Mo. App., 16 S. W. (2d) 637.

Where the duty to keep premises in a safe condition is imposed on a person in control of them, this duty may include the duty to inspect the premises to discover dangerous conditions, R. E. Cox Dry Goods Co. v. Kellog, Tex. Civ. App., 145 S. W. (2d) 675, writ refused; Hinthorn v. Benfer, 90 Kan. 731, 136 Pac. 247, L. R. A. 1915B, 98; Kiehling v. Humes-Deal Co., Mo. App., 16 S. W. (2d) 637; to provide coverings or guard rails or similar devices to protect persons lawfully on the premises from harm, Kirby Lumber Co. v. Hamilton, Tex. Civ. App., 171 S. W. 546, writ refused; Carlson v. Associated Realty Corporation, 114 Conn. 699, 159 Atl. 885; Perry v. Davis & Sargent Lumber Co., 215 Mass. 338, 102 N. E. 320; or to warn such persons of the existence of dangers which could not reasonably be expected to be apparent or obvious, Gardner v Waterloo Cream Separator Co., 134 Iowa 6, 111 N. W. 316; Restatement,

Torts, sec. 343; 38 Am. Jur., Negligence, sec. 96. The standard by which this duty is measured is that of reasonable care, and whether the duty has been properly discharged depends on the facts of each case.

■ In the present case the respects in which the jury found that Henger was negligent were that he failed to have an adequate railing around the shaft, that he failed properly to inspect the shaft, that the shaft was not securely covered over its entire surface, and that Haskell Smith was not warned that the shaft was not securely covered over its entire surface. In each instance the jury also found that the negligence was the proximate cause of the plaintiff's injury. As to the last two grounds of negligence, the respondent contends that the special issues submitted by the court are defective in form because they fail specifically to refer to the defendant; but no exceptions to the charge on this ground were filed and all parties and the trial court and the jury apparently assumed that the defendant's negligence was what was being inquired about in these special issues. In this situation, the right to object to the form of the issues was waived, Rule 274, T. R. C. P., and the deficiency in the jury's findings on those grounds of recovery which were not completely submitted by the special issues will be supplied in such manner as to support the trial court's judgment, if there is evidence to support findings which would sustain the judgment. Rule 279, T. R. C. P.

■ When the record is considered most favorably to the petitioner Smith, as we must consider it, we are of the opinion that there is some evidence to support the judgment of the trial court. The shaft in question was an opening in the sidewalk about six feet by ten feet, just outside the building, and about forty feet deep. It was designed as a means of access to the basement and subbasement through which heavy machinery or equipment could be lowered. It had been constructed before Henger went on the job and at that time was securely covered with boards. When the time came to lower some vault doors into the basement, Henger arranged for the rental of a steel derrick which was placed over the shaft. Haskell Smith aided in the strengthening and later the enlarging of this derrick, which were ordered by Henger. Smith went on the job as the employee of American Transfer and Storage Company until the job of lowering the vault doors was completed. He then became the employee of Westheimer Rigging and Heavy Hauling Company, which was engaged by Henger for the bank to lower air-conditioning equipment through the shaft into the

subbasement. Smith was a structural steel worker and was used as a sort of subforeman by Westheimer on this job.

When the derrick was first placed over the shaft the fixed covering was removed and replaced by loose timbers or boards. Over the center of the shaft heavy timbers were placed, which were used as supports for the machinery and equipment during a part of the process of lowering them into the hole. When the shaft was not in use, on each side of these heavy timbers boards were placed which fitted inside of the derrick and, together with the timbers, completely covered the opening. Over all of these a trapaulin or canvas was streached and tied at each corner to a. leg of the derrick. The purpose of covering the timbers and boards with the canvas was to keep out the cold wind which otherwise would blow through the shaft into the basement and subbasement, where men were working.

During the time that American Traasfer and Storage Company was lowering the vault doors into the basement, a guard rail was erected around the lower party of the derrick. When the Westheimer crew went to work, however, the guard rail was removed by them and instead a rope was tied around the derrick when it was not in use. Other contractors beside American and Westheimer used the shaft, and on several occasions before the date of Smith's injury he found the shaft only partially covered, with the tarpaulin off and some of the boards not in place. One of Henger's watchmen remarked to Smith that someone would get killed if the hole was not covered up, but neither Henger nor his employees made any inspection of the shaft for the purpose of seeing that the boards and timbers were in place when the shaft was not being used.

On the day before Smith's injury, Westheimer's crew quit work about 2:30 in the afternoon and then covered the shaft with the timbers and boards and tied the canvas in place. The next morning when Smith came to work shortly before eight o'clock, he and the other members of his crew were told that they would not work at least until noon, because it was raining and cold. Before leaving the premises, Smith went to the shaft for the purpose of looking into it so as to see how to get a line into the basement to pull some heavy tubes around. There was no rope around the derrick at that time. The opening was partially covered by timbers, and the canvas was stretched over the timbers and tied to the derrick. The boards which were supposed to be on each side of the timbers were not there, however. The evidence does not show who removed them or when they were removed, except that if the testimony of Westheimer's em-

ployees is correct they were removed after Westheimer's crew quit work on the afternoon of the preceding day. Other contractors had men working in the basements and it could be inferred that the employees of one of these contractors used the shaft and failed to replace the boards. There is no evidence that anybody was using the shaft between the time Henger's watchman came on duty at seven o'clock in the morning and the time when Smith fell.

When Smith approached the shaft, he testified that it looked to him the same as it did when all of the boards and timbers were in place, the tarpaulin covering it so that he could not tell that the boards were missing. Smith leaned through the derrick, his feet on the outside of the derrick, and grasped one of the braces with his left hand and took hold of the edge of the canvass and lifted it with his right hand. As he did so, his feet slipped on some gravel or other loose substance on the sidewalk, and he fell through the opening between the timbers and the side of the shaft.

The jury found that the fact that the shaft was not securely covered with timbers was concealed from Haskell Smith by the tarpaulin covering. Smith testified to this effect, and there is therefore support for the jury's finding. In this situation, the condition of the shaft was a hidden or concealed danger. While Westheimer's crew had been told that they would not work that morning, Smith's purpose in looking into the shaft was in furtherance of the work that he expected to do on the job when weather conditions permitted. While he was on the premises for this purpose, he was as much entitled to protection from or warning against hidden dangers as when he was actually working on his employer's time. We think that the evidence raised issues of fact as to whether Henger was negligent in failing to cover the shaft or to inspect the shaft and to warn Smith of its condition. Likewise, we think that issues of fact were raised as to whether the defendant's alleged negligence was a proximate cause of the plaintiff's injury. The jury could reasonably conclude that by a proper inspection Henger's employees could have discovered that the shaft was not properly covered. Of course, Smith would not have fallen into the shaft when his foot slipped if Henger's employees had discovered the fact that the boards were not in place and had put them back before Smith went to work. On the other hand, if, after discovering the boards were missing, Henger's employees had not replaced them but had warned Smith of the condition of the shaft, it would be reasonable to conclude that Smith would have approached the open hole in such a way as to avoid falling into it.

■ The fact that the boards were removed and not replaced by some third party, and not by one of Henger's employees, does not excuse Henger from his duty to see that the premises were in a reasonably safe condition or to inspect the shaft for the purpose of discovering and remedying or giving warning of hidden dangers. Wilson v. Hibbert, 3 Cir., 114 C. C. A. 542, 194 Fed. 838; Gucciardi v. Chisholm, 2 Cir., 145 F. (2d) 514; Henry Pierson & Sons v. Gohr, 126 Md. 385, 94 Atl. 1021; Annotation, 23 A. L. R. 1009.

■ As to the failure to maintain a guard rail, however, we think that as a matter of law Henger cannot be held to be guilty of negligence, because the undisputed evidence shows that a guard rail was placed around the derrick by Henger but was removed by Westheimer's crew because it interfered with their work. Smith was a member of this crew. Henger cannot be held guilty of negligence for failing to do something which he was prevented from doing by the acts of the crew with which the plaintiff was working.

■ Several issues of contributory negligence were submitted by the court to the jury, all of which were answered favorably to the plaintiff. The jury found that Smith did not fail to keep a proper lookout for his own safety, that he did not approach too close to the edge of the shaft just prior to his fall, and that his attempt to raise the tarpaulin and look under it, without first ascertaining that the timbers were in place, was not negligence. We cannot say that the jury's findings are without support in the evidence. Of course, a person cannot recover for injuries from dangers which he voluntarily encounters and which are open and obvious. United Gas Corporation v. Crawford, 141 Texas 332, 172 S. W. (2d) 297; Houston Nat. Bank v. Blair, 146 Texas 387, 207 S. W. (2d) 374; Missouri, K. & T. Ry. Co. of Texas v. Barnes, 37 Tex. Civ. App. 645, 85 S. W. 1006, writ refused. The danger in the shaft when Smith fell, however, existed because of the absence of the boards covering the hole, and their absence was concealed from him by the tarpaulin, according to the jury's finding. While Smith was under a duty to avoid apparent or obvious dangers, he was entitled to assume that Henger as general contractor had discharged his duty to use reasonable care to prevent injury from hidden dangers, and Smith therefore was not under the same duty of inspection as Henger was. City of Denton v. White, Tex. Civ. App., 179 S. W. (2d) 834, writ refused, want of merit; Carlson v. Associated Realty Corporation, 114 Conn. 699, 159 Atl. 885. While of course it is true that any work around a shaft of this kind involves some danger, we think that whether the plaintiff

acted with reasonable care for his own safety in view of the facts known to him was a matter properly submitted to the jury in this case. McAfee v. Travis Gas Corporation, 137 Texas 314, 153 S. W. (2d) 442; Kirby Lumber Co. v. Hamilton, Texas Civ. App., 171 S. W. 546, writ refused.

■ While we are of the opinion that the Court of Civil Appeals incorrectly held that there was no evidence to sustain the trial court's judgment, we have no jurisdiction to pass upon the sufficiency of the evidence to sustain the judgment. The respondent, who was appellant in the Court of Civil Appeals, raised the question by proper assignments in that court of the sufficiency of the evidence to sustain the verdict. We assume that the Court of Civil Appeals, having found that there was no evidence to support the judgment, would sustain the assignments of insufficient evidence if the case were remanded to that court. The proper order to be entered, therefore, is to reverse the judgment of the trial court and remand the cause to the district court for a new trial. Najera v. Great Atlantic & Pacific Tea Co., 146 Texas 367, 207 S. W. (2d) 365; Halliburton v. Texas Indemnity Ins. Co., 147 Texas 133, 213 S. W. (2d) 677. In this case the Court of Civil Appeals expressly held that there was no evidence in the record to support the jury's verdict on the issues of negligence and proximate cause, and we do not think that its rulings on these points can be said to be dependent on the application to the facts of erroneous rules of law, as in Long v. Long, 133 Texas 96, 125 S. W. (2d) 1034; Baker v. Baker, 143 Texas 191, 183 S. W. (2d) 724; and Harris v. Ferguson, 137 Texas 592, 156 S. W. (2d) 135.

We approve what is said in the dissenting opinion of Associate Justice McGill regarding the points raised by Henger in the Court of Civil Appeals relating to the admissibility of evidence and the refusal of the trial court to submit requested special issues. It is not necessary for us to pass on the points assigned in the Court of Civil Appeals as to the argument of counsel and the alleged excessiveness of the damages, since they probably will not arise upon a new trial.

■ There remains the legal question of the right of the Texas Employers Insurance Association to recover an attorney's fee, in addition to reimbursement for workmen's compensation and medical and other expenses paid to or for the benefit of the employee. The trial court gave judgment for such a fee under Article 8307, section 6a, which reads in part as follows: "If compensation be claimed under this law by the injured employé or his

legal beneficiaries, then the association shall be subrogated to the rights of the injured employé in so far as may be necessary and may enforce in the name of the injured employé or of his legal beneficiaries or in its own name and for the joint use and benefit of said employé or beneficiaries and the association the liability of said other person, and in case the association recovers a sum greater than that paid or assumed by the association to the employé or his legal beneficiaries, together with a reasonable cost of enforcing such liability, which shall be determined by the court trying the case, then out of the sum so recovered the association shall reimburse itself and pay said cost and the excess so recovered shall be paid to the injured employé or his beneficiaries."

The contention of the petitioner Smith is that an attorney's fee can be recovered by the insurance carrier only if the insurance carrier alone enforces the liability of the third party by instituting and prosecuting a suit to final judgment, without the assistance of counsel retained by the employee. Since in this case the suit was originally instituted by the employee through his own counsel, it is argued that the insurance company cannot collect an attorney's fee out of the amount recovered from the third party. It is not contended that the amount of the fee is excessive for the services actually rendered by the company's attorneys; in fact, the amount of the fee was stipulated, if one was to be allowed.

The statute, Article 8307, section 6a, quoted above, places no condition such as Mrs. Smith contends for upon the right of the insurance carrier to recover the reasonable cost of enforcing the third party's liability, and we do not think that such a condition or restriction should be implied. The particular question raised by Mrs. Smith has not heretofore been decided, but in Traders & General Ins. Co. v. West Texas Utilities Co., 140 Texas 57, 165 S. W. (2d) 713, recovery of attorney's fees was permitted where both the employee and the insurance carrier prosecuted the suit against the third party. If Mrs. Smith's view was adopted, it would mean that the employee, by hiring an attorney of his own, could prevent the insurance carrier from recovering any attorney's fee, even though the insurance carrier's lawyers did substantially all of the work required to obtain a final judgment against the third party. We think that the proper construction of the statute is that in any case where the insurance carrier is a party to the suit against the third party and employs its own attorney, the insurance carrier should be allowed to recover a reasonable attorney's fee. This apparently is the construction given by the Missouri courts to a

similar statute. Wilhelm v. Hersh, Mo. Ap., 50 S. W. (2d) 735. The amount of the fee will be determined by the facts in each case, depending in part on the extent to which the insurance carrier's lawyers by their efforts contribute to the successful enforcement of the third party's liability.

The judgments of the Court of Civil Appeals and the district court are reversed and the cause is remanded to the district court for a new trial.

Opinion delivered January 11, 1950.

Rehearing overruled February 15, 1950.