**H. E. BUTT GROCERY COMPANY,**
Appellant,

v.

**Morris SHACHET et ux., Appellees.**

**No. 3929.**

Court of Civil Appeals of Texas.

Eastland.

Nov. 20, 1964.

Rehearing Denied Dec. 11, 1964.

Groce, Hebdon, Fahey & Smith, San Antonio, for appellant.

Porter, Madalinski & Mondin, San Antonio, for appellees.

WALTER, Justice.

Fannie Shachet and her husband Morris Shachet filed suit against H. E. Butt Grocery Company for damages resulting from alleged personal injuries sustained by Mrs. Shachet when she fell from a bench provided by Butt for its customers. Plaintiffs pleaded that after Mrs. Shachet seated herself in a proper manner upon the bench she suddenly and without warning found herself tossed to the concrete floor in a violent manner causing injuries to her body.

Butt filed a plea of privilege to be sued in Nueces County. Shachets controverted the plea and alleged subdivisions 9a and 23 of Article 1995, Vernon's Ann.Civ.St. were applicable and sought to retain venue in Bexar County. From a judgment overruling its plea of privilege, Butt has appealed.

It contends there was no evidence and insufficient evidence of negligence and proximate cause under subdivisions 9a and 23 of Article 1995 to justify retention of venue in Bexar County. The Shachets are residents of Bexar County. Butt is a corporation with its principal place of business in Nueces County. It owns several stores in Bexar County.

Edward Whitted, Butt's manager at the store where Mrs. Shachet was alleged to have been injured, testified substantially as follows: We have a table and a bench at the store. The purpose of the barbeque bench and the table is for the use of youngsters, to keep them out of their mother's hair. It is a sort of a dayroom and we have

Comic books there to entertain the young-sters. We maintain the table and bench for the benefit of our customers. Mr. and Mrs. Shachet are regular customers of ours. The benches are redwood outdoor benches. They are very low and very small and we purchased them to be used by chil-dren. There is about a ten inch overhang from the end of the bench to the legs that support it. The bench is six feet long. I have no idea how much they weigh.

John Anderson testified substantially as follows: I work at the H. E. B. Store here in San Antonio as a stock boy. I remember the incident when Mrs. Shachet fell from the bench there at the store. I helped her to her car after she fell. I am familiar with the benches there at the store and they are used by anyone who wants to use them. On occasions I have used them myself. I would estimate the benches are about four feet long, about one foot wide and the over-hang from the leg to the end of the bench would be about nine inches to one foot.

Mickey Hallam testified substantially as follows: Before I started to work at the store I had used the benches and read Comic books at the place where Mrs. Sha-chet fell. The benches are about five and a half feet long and about one foot wide. A bench is supported by two legs. There is about one foot overhang from the leg to the end of the bench. He was asked "as far as the *heighth* is concerned from the floor level to the top, are they regular barbe-que tables, the regular heighth?" and he answered "Yes". If a person sits on the end of a bench it would probably tilt.

Morris Shachet testified substantially as follows: On the 11th of November, 1963, my wife and I were in Butt's Store. On this occasion we bought some groceries. My wife sat down on a bench in the store. The floor had been washed and it was slip-pery. When my wife sat down on the bench it flipped over and she fell on the floor. There was no kind of warning given to my wife that the benches were maintained only for kids. No one informed me that if I sat down on the end of the bench it would tilt. My wife was injured as a result of this fall and was confined in the Baptist Memorial Hospital for three days. My wife is eighty years of age and I am seventy nine.

Our Supreme Court in Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 at page 378 said:

"The 'no duty' doctrine is this: the occupier of land or premises is re-quired to keep his land or premises in a reasonably safe condition for his invitees. This includes a duty of the occupier to inspect and to discover dangerous conditions. Smith v. Hen-ger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 853 (1950); Genell, Inc. v. Flynn [163 Tex. 632] 358 S.W.2d 543 (1962). His duty is to protect his in-vitees from dangers of which he, the occupier, knows, or (because of his duty to inspect) of which he should know in the exercise of ordinary care. If there are dangers which are not open and obvious, he is under a duty to take such precautions as a reasonably pru-dent person would take to protect his invitees therefrom or to warn them thereof."

In Camp v. J. H. Kirkpatrick Co., (Writ Ref. N.R.E.), Tex.Civ.App., 250 S.W.2d 413 at page 416 the court said:

"By such a duty rule, the invitee then is under a burden to prove the presence of a danger on the premises and that the owner knew or ought to have known of that danger, that he was negligent in maintaining the premises in that condition, and that such neg-ligence proximately caused the injury."

A careful study of all the facts and cir-cumstances in evidence leads us to the con-clusion that issues of fact were raised on negligence and proximate cause. We have considered all of appellant's points and find no merit in them. They are overruled.

The judgment is affirmed.