**Archie C. FITZGERALD, dba Archie C. Fitzgerald Construction Co., Appellant,**

v.

**Nicholas ANDRADE, Appellee.**

**No. 11399.**

Court of Civil Appeals of Texas.

Austin.

April 20, 1966.

Rehearing Denied May 11, 1966.

McKay & Avery, Charlie D. Dye, Austin, for appellant.

Byrd, Davis & Eisenberg, L. Tonnett Byrd, Tom H. Davis, Marion S. Roberts, Jr., Austin, for appellee.

HUGHES, Justice.

This suit is for damages for personal injuries sustained by Nicholas Andrade, appellee, on April 29, 1963, while working on the construction of the Ramada Inn in

Brownsville, Texas. Appellant, Archie C. Fitzgerald, doing business as Archie C. Fitzgerald Construction Company, was general contractor for this construction and had control of the entire project. Dave DePue was his assistant superintendent and general carpenter foreman. One of his duties was to manage the carpenters employed on the job and the equipment used by them, and in performing these duties he was acting within the scope of his employment.

Appellee was a painter on this job. He was injured in a fall from a scaffold while engaged in painting some woodwork in the construction.

Two of appellant's carpenters built this scaffold, and this was within the scope of their employment. No painter on the job built any scaffolds used on the job. This was not in their trade.

Appellant made a written contract with W. L. Hodges to do the paint work on the construction. Appellee worked under and for Mr. Hodges. Before any of the painters employed by Mr. Hodges used the scaffolds built by the carpenters, Mr. Hodges asked and obtained permission from such carpenters for such use. Mr. Hodges also obtained similar permission from Mr. De-Pue, appellant's assistant superintendent.

Appellee was instructed by Mr. Hodges to use these scaffolds and was told by Mr. Hodges that he had obtained permission from the superintendent on the job for their use.

The painters employed by Mr. Hodges had been using these scaffolds for three or four days before appellee's fall.

Trial was to a jury which returned a verdict favorable to appellee, and on this verdict, judgment was rendered for him.

Appellant's first three points, jointly briefed, are to the effect that appellee in using the scaffolds was either a trespasser or licensee, or that there was an issue of fact as to his status, and that the court erred in not inquiring of the jury what his status was or that, as a matter of law, appellee was a trespasser or licensee and was not entitled to recover on jury findings based on the standard of ordinary or reasonable care.

The contract between appellant and W. L. Hodges, under which the painting was done, was offered in evidence, but excluded.[1] This contract provided that Mr. Hodges, appellee's employer, should furnish all "rigging" and "scaffolds" necessary for the "complete installation" of the painting. Mr. Hodges did have scaffolds on the job for this purpose but they were not being used by appellee when he fell. The reason for this was, as the evidence shows, that it was the duty of the painters to paint molding which the carpenters were installing around or just under the eaves of the Inn as soon as it was installed. The painters simply followed the carpenters on the carpenters' scaffold. Under the circumstances, it is easily understood why permission was obtained for the painters to use the carpenters' scaffolds rather than tearing them down and putting up and using their own.

Mr. F. H. Kohutek, general manager for appellant, testified that his superintendent on the Ramada Inn job was Mr. D. T. Jordan and that he had given Mr. Jordan specific instructions not to permit the painters to use "the scaffolds." Mr. Kohutek also testified that Mr. Dave DePue, the carpenter foreman, had no authority to authorize the painters to use the scaffolds.

It is our opinion that with or without the painting contract in evidence there is no evidence that appellee was other than an invitee when using the scaffold from which he fell. This conclusion follows from the application of well established rules of law to the undisputed facts.

Appellant as general contractor in control of the Ramada Inn construction was

---

1. Appellant complains of this in Point 7.

under a duty to use due care to provide for the safety of the employes of his subcontractors. Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 853. In order to be entitled to this protection an employe must, however, not go beyond that portion of the premises which was designed for his accommodation or use. Burton Construction and Shipbuilding Co. v. Broussard, 154 Tex. 50, 273 S.W.2d 598.

■ It is quite true that a person may be an invitee as to certain portions of premises but not as to other portions of the same premises. Appellant would bring itself within this limitation on the general rule of liability above stated, contending that when appellee was on the "carpenters" scaffold he was not where it was anticipated he would be and was on premises not designed for his accommodation and use.

■ It is beyond question that appellee was at the proper place for doing the work he was hired to do. If he had lawful authority to use the carpenters' scaffold all doubt as to his status as an invitee is removed. We are of the opinion that he had this authority.

Mr. David DePue testified that he was assistant superintendent or general carpenter foreman for appellant on this job. The scaffolds in question were built under Mr. DePue's directions. He gave permission for the painters to use the scaffolds.

We do not understand appellant, under these points, to contend that Mr. DePue was not acting within the scope of his authority when he gave permission for the painters to use the carpenters' scaffolds. We, in any event, hold that he was, as a matter of law, so acting. Granting such permission was but exercise of sound judgment on a trivial matter in furtherance of the economic and expeditious construction of the Inn and in so doing Mr. DePue was about his master's business. That such action may have been against his master's instructions is of no consequence. Sid Katz, Inc. v. Walsh and Burney Co., 142 Tex. 232, 177 S.W.2d 49.

We overrule appellant's first three points.

Appellant jointly briefs points four through twelve. We take from appellant's brief its analyses of these points:

"Points of Error 4 through 12 are grouped for presentation inasmuch as they pertain to the action of the trial court in excluding testimony and in refusing requested special issues respecting vital defensive theories raised by the pleading and evidence in the case. By his first amended original answer defendant made allegations respecting his theory of the case on the following matters: (1) that there was some degree of risk inherent in the type work which plaintiff was performing (raising the defense that dangers inherent in the work are classified as 'transitory dangers' and ones as to which defendant would have no duty to plaintiff); (2) the affirmative defense of 'volenti non fit injuria;' (3) no duty in law concerning the scaffold from which plaintiff fell; (4) no duty inasmuch as the manner in which the scaffold was equipped and constructed was open and obvious; and, (5) contributory negligence of plaintiff in failing to make use of his employer's scaffold."

Appellee's cause of action was, in part, based on allegations that an employe of appellant named Garcia removed scaffold boards near where he was working on the scaffold in such way that it caused the scaffold supports to move resulting in his fall, that this and Garcia's failure to warn that he was about to move such board was negligence proximately causing his injuries.

The evidence shows that appellee and his co-worker, Wornell, were using only one scaffold board, whereas to the right and left of them the scaffolds were two boards wide. This single board on which appellee was standing was to the outside edge of the scaffold support, leaving an open space between him and the second floor balcony. The eave of the Inn was about five feet above the scaffold board, and the molding which appellee was painting was in under

the eave and it was necessary for appellee to stoop in order to paint it.

Appellant offered, by a competent witness, evidence of the following nature:

"(1) It is dangerous to work on a scaffold.

(2) It is hazardous to work on a scaffold and everybody recognizes this in the construction business.

(3) With respect to exterior scaffolds and based on his experience in the business, he would consider the simple act of working on a scaffold as involving the risk of injury from falling.

(4) The risk and danger in this connection is a known risk and one which is appreciated.

(5) The risk of working on a scaffold is something that in his opinion is open and obvious.

(6) He saw the scaffolds on this job and in his opinion the manner in which the supports were constructed was open and obvious.

(7) The manner in which the scaffold was equipped was, in his opinion, open and obvious."

This evidence was excluded.

The trial court also excluded evidence of the witness Ernest Robertson that it was not safe for appellee and his co-worker to stand as close together as they stood on the scaffold, he having previously testified that he had seen them standing together talking and smoking cigarettes.

Appellant also here complains of the exclusion of the contract between it and Hodges to which we have made reference.

The jury found that the scaffold fell because of the negligence of appellant's employe; that appellant's employe, Garcia, moved the scaffold boards so as to cause the scaffold support to move; that Garcia failed to warn appellee that he was about to move such boards.

The jury failed to find that appellant's employes failed to provide adequate support for the scaffolds, or that such failure was a proximate cause of the scaffold falling. The jury also failed to find that such scaffolds were unsafe.

The jury also failed to find that appellee and his co-worker Wornell were standing more closely together than was reasonable and prudent.

The jury failed to find that appellee was negligent in failing to step from the scaffold to the balcony just before falling; also it failed to find that appellee's failure to check the scaffold before climbing it was negligence.

Appellant sought submission of issues to the jury inquiring if appellee was negligent in using its scaffolds rather than those of Hodges; whether appellee working on the scaffold involved the risk of falling; whether appellee had knowledge of and appreciated this risk; whether appellee voluntarily assumed this risk; and, whether the manner in which the scaffold was equipped and constructed was open and obvious to appellee.

■ We have previously discussed the failure of the trial court to admit in evidence the contract between Hodges and appellant. For the reasons previously given, we hold that if it was error to admit such contract, it was harmless error under Rule 434, Texas Rules of Civil Procedure.

■ We hold that it was not error to exclude the proffered opinion of the witness Robertson that appellee and his co-worker were standing too closely together on the scaffold for their safety for the reason that the relevant facts were clearly before the jury and it was in an equal position with the witness to draw inferences. See McCormick and Ray, Texas Law of Evidence, 2nd Ed., Vol. 2, Secs. 1397–1400.

■ We hold that the trial court was not in error in refusing to submit to the jury issues pertaining to the defenses of "open

and obvious" and "volenti" doctrines for the reason that they are inapplicable to the negligent acts of appellant's employe, as alleged and as found by the jury. Hobbs v. Grant, 314 S.W.2d 351, Austin, writ ref., n. r. e., American Cooperage Company v. Clemons, 364 S.W.2d 705, Fort Worth, writ ref., n. r. e.

We add only that there is no evidence upon which a finding could be based that appellee knowingly assumed the risk of an employe of appellant pulling a board from under the scaffold board supports without warning.

There is no evidence to justify submission of an issue as to whether appellee was negligent in using the carpenters' scaffolds instead of the painters' scaffolds.

We overrule all the points under discussion. ·

Appellant jointly briefs points thirteen through sixteen.

These points are to the effect that there is no evidence that an employe of appellant named Garcia, within the scope of his employment, removed one of the scaffold boards as alleged or that he failed to give warning of such proposed removal.

■ We overrule these points. The following summary of the evidence, in our opinion, supports the jury findings in these respects.

"Ernest (Red) Robertson and Floyd (Curley) Wheatley both testified that they were employed by defendant as carpenters on the Ramada Inn job, and that they had assigned to them a Mexican helper named Garcia.

The evidence shows that Robertson and Wheatley had put up moulding along the north side of the building and were in the process of putting up moulding along the east side of the building when plaintiff fell. Appellee and Wornell had been following Robertson and Wheatley painting the moulding as they were putting it up.

Garcia identified himself as the carpenter's helper who was working for Curley (Wheatley) and Red (Robertson) and testified that they were the only people in the vicinity when the painters fell. He was also able to identify appellee as one of the painters who fell from the scaffold.

DePue verified the fact that other than the painters, appellee and Wornell, there were no laborers around the scaffold when it fell besides employees of the appellant. * * *

Wornell testified that while he and appellee were painting from the west toward the east on the north side of the building, a carpenter's helper was picking up boards from behind them and taking them around and placing them in front of where the carpenters were working. As he and appellee would finish a section of scaffold, the helper would pick those boards up and put them in front of the carpenters, and that while they were about 20' from the east end of the building, the helper pulled one of the boards off of the scaffold behind them and caused the scaffold and them to fall. He saw this helper take hold of the board and jerk it, causing the scaffold to fall. While he didn't know the helper's name, he identified him as a Mexican boy who was working for the carpenters that they were following. Wornell further testified that while he was lying on the ground in pain between three and six minutes after the fall, that he told DePue and Hodges that the helper had pulled the scaffold boards and the brace had pulled loose, causing them to fall.

Appellee stated that after he fell, he saw a carpenter's helper standing there with a board in his hand, and while they were lying there on the ground, he heard Wornell say to DePue that a carpenter's helper pulled the board out. He also testified that the carpenter's helper who was working near them at the time pulled a board on the scaffold.

Robertson testified that he and Wheatley had worked all the way down the north side of the building, had turned the northeast corner and were on the east side when the painters fell, and that after he and Wheatley had worked around to the east side of the building, that some of the scaffold boards were moved from the north side of the building to the east side. He testified that when the people would get through using a part of the scaffold, they would take the scaffold boards off of that part and put them around to the other end of the scaffold so they could move around the building. In other words, they would take the boards off of the scaffold in back of the painters and move them around in front of the carpenters.

Robertson testified that their helper (Garcia) was getting the boards from the scaffold on the north side and was moving them around to where they were working. He had told Garcia to get boards off of the scaffold they had finished using, and Garcia had gotten one board and brought it back and had gone again for another board just a few minutes before he heard the painters fall. He further testified that when the painters fell, their helper, Garcia, was on the north side (where the painters were) and that he was over there 'getting me some scaffold boards.'

DePue verified that Garcia was taking the planks from behind the painters and putting them up in front of where the carpenters were working, and that he had been taking planks from several sections of the scaffold back of where the painters were working before they fell.

Hodges testified that at the time appellee fell, about half or two-thirds of the scaffold boards along the north side of the building had already been removed.

It was stipulated that Garcia was at the time the painters fell an employee of defendant construction company and was working in the course of his employment at the time."

Appellant jointly briefs points seventeen through twenty four.

These points raise the issue that the findings of the jury on the matters discussed under points thirteen through sixteen are not sufficiently supported by the evidence and that such findings are against the great weight and preponderance of the evidence.

We have set out the evidence from appellee's point of view in disposing of the preceding points contending there was no evidence to support these findings. Appellant relies upon the following evidence.

"In addition to Hodges as the painting sub-contractor, there were other trades on the job in the capacity of sub-contractors under defendant. The other trades also had their helpers and laborers. In fact, Hodges even had helpers on the job for his painters.

The testimony of the following witnesses:

Wornell— '* * * (T)his helper that was carrying the boards, which the boards are overlapped on the places in this position, and he would pull these boards out. Well, when he pulled this board out, the brace pulled around and the boards dropped this way, and, of course, we were on them. * * * (T)he boy * * * pulled the outside board. * * *'

DePue—at the time of accident the painters remarked that '* * * (A) laborer had jerked a plank out from under them.'

Andrade—He does not know what happened, how the scaffold brace broke, or what caused the brace to break. At the time of the accident he was looking up into the area he was painting.

Robertson—Garcia was his and Wheatley's helper. He and Wheatley were on the backside, or east side, of the building when the accident occurred. He had sent Garcia to get some scaffold boards that were at least '30 or 40 feet' from where plaintiff was working. He does not know what caused the accident to happen. The painters were at the northeast corner of the building when the accident occurred and as to the scaffold boards at this location ' * * * (N)obody ever touched them.'

Wheatley—At the time of the accident he, Robertson, and the helper Garcia were around the corner of the building.

Garcia—At the time of accident he was, on the east or backside of the building. The painters were on the north side and he was on the east side of the building. He did not pick up any runboards in the area where plaintiff and Wornell were working; he did not pull any runboards out from underneath them; he did not touch any boards upon which they were standing; he did not touch any boards close to where they were standing."

Considering all the evidence in the record we do not find the jury findings to be against the great weight and preponderance of the evidence as to be clearly wrong or manifestly unjust. Neither do we find the evidence to be insufficient to support the findings in question. These points are overruled.

Appellant jointly briefs points twenty five through twenty eight.

These points complain of the action of the trial court in submitting to the jury issues based on general negligence of appellant under the doctrine of res ipsa loquitur.

The jury found that the scaffold fell because of the negligence of employes of appellant and that this negligence was the proximate cause of appellee's injuries.

Since there were findings by the jury of specific acts of negligence of an employe of appellant sufficient to support the judgment, we need not discuss or decide the propriety of these issues, it not being contended that their submission prejudiced any right of appellant.

Points of error twenty nine through thirty one are jointly briefed. These points contend that an issue of fact was presented regarding the authority of David DePue to grant permission for the painters to use the carpenters' scaffold and as to whether in granting such permission he was acting within the scope of his employment.

We have discussed and answered the substance of these points adversely to appellant in disposing of the first three points. We, therefore, overrule these points.

■ Point thirty two is that there is no evidence of the reasonableness of or necessity for future medical expenses of appellee to support the jury finding on this issue.

Dr. Robert Milam testified that in all probability appellee would require further medical treatment, that this was a reasonable medical probability. Dr. Milam also testified that further medical treatment was reasonably certain and if so medication and treatment would be necessary. He also testified that $100.00 per year for the next 21 years was a reasonable amount for the treatment of a person with the injuries sustained by appellee.

There being no reversible error, the judgment of the trial court is affirmed.

Affirmed.