**O. V. OLIVIER, Appellant,**

v.

**William SNOWDEN, Appellee.**

No. 6901.

Court of Civil Appeals of Texas.

Beaumont.

May 25, 1967.

Orgain, Bell & Tucker, Beaumont, for appellant.

Harry Burns, Houston, Fuller, Fuller & McPherson, Port Arthur, for appellee.

PARKER, Justice.

Based on a jury verdict, the plaintiff William Snowden recovered judgment against O. V. Olivier, defendant, for $10,000 for personal injuries sustained by plaintiff when he fell from a scaffold owned by defendant. To the extent of $6,736.65, such recovery is subrogated to Texas Employers' Insurance Association, the workmen's compensation carrier of M. L. Osborne, plaintiff's employer, by reason of its payment of such amount to Snowden. The parties will be designated as in the trial court.

At the time of the accident in question plaintiff was employed as a laborer by Osborne, the general contractor in charge of construction work on the Merchants National Bank job in Port Arthur, Texas. Defendant Olivier was a sub-contractor employed to do the plastering work. Sub-contractors and the general contractor, respectively, built their own scaffolds unless one was already in place constructed by another sub-contractor or the general contractor. Should a scaffold be in place where one was needed, although not built by that contractor, it was used as the "next man's scaffold". The various contractors and their employees used each other's scaffolds whenever useful. This practice, custom, agreement, understanding and routine standard operating procedure was followed in general as well as on this particular job. Each contractor expected to put up his own scaffolding if there wasn't one already in place. The mutual use of scaffolds was of benefit to each contractor, saving the extra cost of tearing down another contractor's scaffold and erecting one in its place. Scaffolds normally consisted of 7 or 8 boards supported by metal frames 8 feet apart. Boards used were called 2" boards but were actually 1⅝" thick to be used for walking and working purposes. The outer boards from the metal frames were sometimes used only as a storage space for plastering materials or support for the mortar board used by the plasterers. In that event, boards of 1" thickness were used. That part of the scaffold used for walking purposes was between the metal frames. Expert and experienced contractors and laborers testified that a 2" board is the customary size board used for scaffolds in the construction business. No contractor or sub-contractor used 1" boards to their knowledge. It was their opinion that a 1" board would not hold a person, would collapse if a person walked across it and this fact is common knowledge in the construction business. Everybody on the job assumes that a scaffold in place is safe to get on. Defendant, personally, and his employees used Osborne's scaffolds on this job. Workmen could not tell who built any scaffold they used.

On the occasion in question one of the general contractor's foremen ordered plaintiff to use a scaffold erected by the sub-contractor and defendant Olivier. Plaintiff was directed to remove some heavy forms from the top of the building. The forms were used by plaintiff's employer and were in no way connected with defendant's work. The scaffold was alongside the outside of the building about 7 or 8 feet off the ground. Lonnie Zeno, also employed by Osborne, climbed up to a higher level of the scaffold and handed the forms down to the plaintiff. The forms weighed in excess of 300 pounds. When the first form was lowered to plaintiff with the full weight of the form coming to rest on the boards on which plaintiff was standing, a board broke and plaintiff fell 6 or 7 feet to the ground. The board that broke was 1" in thickness. Plaintiff recovered workmen's compensation benefits as a result of his injuries from

this accident and then brought this action against defendant. In answer to special issues the jury found a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances would not use a 1″ thick board on the scaffold in question and that the use of such 1″ thick board was a proximate cause of the plaintiff's fall in question.

Olivier was not entitled to the exclusive use and possession of his scaffolds. Snowden and his employer, Osborne, were not trespassers in using the scaffold in question erected by the defendant Olivier. Plaintiff was rightfully using the scaffold as directed by his foreman. Such use was necessary and proper in the prosecution of the business of his employer, Osborne. At the time of the injury plaintiff was using the scaffold of defendant. Defendant and his employees never protested the use of this scaffold by Osborne and his employee when they used this scaffold, including the time of the accident when they were present and saw plaintiff going upon the scaffold.

 Defendant asserts that there is no evidence or insufficient evidence, first, that plaintiff was an invitee on the scaffold in question and, second, that the use of the 1″ board was the proximate cause of plaintiff's injury. The employees of the general contractor Osborne and the employees of the sub-contractor Olivier were entitled to a safe place to work. Olivier owed the duty to use reasonable care to see that the scaffold constructed by him was safe for plaintiff to use. The working agreement between the contractors as to scaffolds was of mutual advantage to each, and this fact is controlling. Under the principles stated in Hernandez v. Heldenfels, 374 S.W.2d 196 (Tex.1963), and in Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425 (1950), the occupant of premises has the duty to use reasonable care, make and keep the premises safe for the use of persons rightfully using the premises for business purposes, including the class of persons to whom such duty is owed who are employees of

the owner of the premises or contractors upon construction or other work upon the premises. These cases also hold that these are questions for the jury to determine. Other cases are: Fitzgerald v. Andrade, Tex.Civ.App., 402 S.W.2d 563 (wr. ref'd, n. r. e.); W. R. Grimshaw Co. v. Zoller, 396 S.W.2d 477 (wr. ref'd, n. r. e.).

In the "no evidence" points, that part of the record most favorable to the findings of the jury is controlling. All the record and all evidence is reviewed in considering points of error contending there is insufficient evidence to support the jury's findings. The "no evidence" points are overruled. The "insufficient" points are overruled. All other points of error are overruled.

Judgment affirmed.